UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CANADIAN SOLAR INC., CANADIAN SOLAR INTERNATIONAL, LTD., CANADIAN SOLAR MANUFACTURING (LUOYANG) INC., CANADIAN SOLAR MANUFACTURING (CHANGSHU) INC., CANADIAN SOLAR (USA) INC., CSI CELLS CO., LTD., CSI SOLAR POWER (CHINA) INC., CSI SOLAR POWER GROUP CO., LTD., CSI SOLARTRONICS (CHANGSHU) CO., LTD , CSI SOLAR TECHNOLOGIES INC., CSI NEW ENERGY HOLDING CO., LTD., CSI-GCL SOLAR MANUFACTURING (YANCHENG) CO., LTD., CHANGSHU TEGU NEW MATERIALS TECHNOLOGY CO., LTD., CHANGSHU TLIAN CO., LTD., AND SUZHOU SANYSOLAR MATERIALS TECHNOLOGY CO., LTD., <br><br>Plaintiffs, <br><br>v. <br><br>UNITED STATES, <br><br>Defendant. | Ct. No. 19-00178 |

**COMPLAINT**

Plaintiffs Canadian Solar Inc., Canadian Solar International, Ltd., Canadian Solar Manufacturing (Luoyang) Inc., Canadian Solar Manufacturing (Changshu) Inc., CSI Cells Co., Ltd., CSI Solar Power (China) Inc., CSI Solar Power Group Co., Ltd., CSI Solartronics (Changshu) Co., Ltd., CSI Solar Technologies Inc., CSI New Energy Holding Co., Ltd., CSI-GCL Solar Manufacturing (Yancheng) Co., Ltd., Changshu Tegu New Materials Technology Co., Ltd., Changshu Tlian Co., Ltd., Suzhou Sanysolar Materials Technology Co., Ltd., producers and exporters of the subject merchandise, and Canadian Solar (USA) Inc., an importer of the subject merchandise (collectively, "Canadian Solar"), by and through their counsel, allege as follows:

# I. PROCEEDING UNDER REVIEW

1. This action seeks judicial review of certain aspects of the final results of the fifth administrative review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules from the People's Republic of China ("China") conducted by the U.S. Department of Commerce ("Commerce"). See <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review and Rescission of Review, in Part; 2016</u>, 84 Fed. Reg. 45,125 (Dep't Commerce Aug. 28, 2019) ("<u>Final Results</u>"), and accompanying Issues and Dec. Mem. ("Final I&D Mem."). The review in question covers entries of crystalline silicon photovoltaic cells, whether or not assembled into modules during the period January 1, 2016 through December 31, 2016.

# II. JURISDICTION AND STANDARD OF REVIEW

2. Canadian Solar brings this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii), 19 U.S.C. § 1516a(a)(2)(A)(i)(I); (a)(2)(B)(iii) (2016).

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and section 516A(a)(2)(A)(i)(I), (B)(iii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (B)(iii).

4. The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

### III. STANDING

5. Canadian Solar, collectively, consists of foreign producers and exporters of the subject merchandise who were selected as a mandatory respondent during the countervailing duty administrative review and an importer of the subject merchandise. Canadian Solar is, therefore, an "interested part{y}" within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. § 1677(9)(A) and 1516a(f)(3).

6. Accordingly, Canadian Solar has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

### IV. TIMELINESS OF THIS ACTION

7. On August 28, 2019, Commerce published the Final Results in the Federal Register.

8. Canadian Solar filed a summons concurrently with this complaint, within 30 days of the publication in the Federal Register of the Final Results.

9. Thus, Canadian Solar's summons and complaint are timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i) and (B)(iii) and USCIT R. 3(a)(2), 6(a).

### V. STATEMENT OF FACTS

10. Commerce initiated the countervailing duty investigation of crystalline silicon photovoltaic cells, whether or not assembled into modules from China on November 16, 2011, following the filing of the petition on October 19, 2011. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Countervailing Duty Investigation, 76 Fed. Reg. 70,966 (Dep't Commerce Nov. 16, 2011). The International Trade Commission (the "Commission") simultaneously conducted its investigation. See Crystalline Silicon Photovoltaic Cells and Modules From China; Institution of Antidumping

and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations, 76 Fed. Reg. 66,748 (Int'l Trade Comm'n Oct. 27, 2011).

11. On December 7, 2012, Commerce issued a countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules from China following an affirmative countervailing duty determination and an affirmative injury determination by the Commission. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Countervailing Duty Order, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012).

12. Between December 2017 and January 2018, certain interested parties requested that Commerce conduct an administrative review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from China. On February 23, 2018, Commerce initiated the fifth administrative review covering the period January 1, 2016 through December 31, 2016. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 83 Fed. Reg. 8,058, 8,064-67 (Dep't Commerce Feb. 23, 2018).

13. On April 17, 2018, Commerce selected two mandatory respondents: (1) Canadian Solar Inc. and (2) Jinko Solar Import and Export Co., Ltd. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Intent To Rescind the Review, in Part; 2016, 84 Fed. Reg. 5,051 (Dep't Commerce Feb. 20, 2019), and accompanying Issues and Dec. Mem. at 3 ("Prelim. I&D Mem.").

14. Between May 17, 2018 and December 19, 2018, Canadian Solar timely submitted answers to Commerce's Countervailing Duty ("CVD") Questionnaire. See Prelim. I&D Mem. at 3, n.12.

15. On November 5, 2018, and on December 4, 2018, Canadian Solar timely submitted benchmark data. See id. at 4. On November 15, 2018, Canadian Solar submitted information to rebut or clarify benchmark information submitted by SolarWorld Americas Inc. ("SolarWorld"). Id.

16. On August 1, 2019, Canadian Solar submitted a case brief for Commerce's consideration prior to issuing the Final Results. See Final I&D Mem. at 2. Canadian Solar made various arguments for Commerce's consideration, including contesting Commerce's treatment of the Export Buyer's Credit Program ("EBCP") and elements of Commerce's less-than-adequate-remuneration ("LTAR") benefit calculations. See id. On August 6, 2019, Canadian Solar submitted a rebuttal brief in response to certain arguments made by SolarWorld. See id.

17. On August 28, 2019, Commerce published the Final Results, calculating a countervailing duty subsidy rate of 9.7 percent for Canadian Solar. Final Results, 84 Fed. Reg. at 45,126.

18. In the Final Results, Commerce used adverse facts available ("AFA") to impute a benefit under the EBCP to Canadian Solar, despite the fact that there was no information missing on the record because a cooperating Canadian Solar supplied that its customers, and Canadian Solar by extension, did not receive support through this mechanism. See Final I&D Mem. at Cmt. 1.

19. In the Final Results, Commerce made certain determinations regarding the nature and calculation of the benefit received by Canadian Solar through LTAR programs on aluminum extrusions, solar glass and polysilicon. Id. at Cmt. 2, 4-5. Commerce found that the provision of aluminum extrusions for LTAR program was "*de facto* specific within the meaning of section 771(5A)(D)(iii)(I) of the Act" on the basis that the recipient industries, ranging broadly from

5

construction to consumer durables, including the catch all category "other industries," were limited compared to overall structure of the Chinese economy. Id. at Cmt. 2.

20. To construct its benchmark for the aluminum extrusions for LTAR program, Commerce averaged data from the United Nations Comtrade Database ("Comtrade") at the six-digit Harmonized Tariff Schedule level (known as a "basket" category) with input-specific data compiled by IHS Technology ("IHS"). Id.

21. In the Final Results, Commerce relied on AFA both to make its specificity finding that electricity for LTAR subsidies were limited to priority industries, such as the solar power industry, and also to calculate its benchmark by sampling the highest provincial rates in China, rather than averaging all provincial rates. See id. at Cmt. 3. As part of its electricity for LTAR program benchmark calculation, Commerce included benefits calculated after January 1, 2016, the effective date of a new provincial pricing policy by the Government of China ("GOC") that delegated authority to the provinces to prepare and publish electricity tariff rates for their own jurisdictions. Id.

22. To construct its polysilicon for LTAR program benchmark, Commerce declined to utilize actual transaction data from Canadian Solar's arms-length, market economy purchases to arrive at a "tier one" benchmark, despite evidence that the GOC was not distorting domestic polysilicon prices, opting instead to calculate the benchmark using "tier two" sources. See id. at Cmt. 4.

23. In its benchmark calculation for the land LTAR program, Commerce used a nearly-decade-old CBRE Thailand land report rather than a world-wide market average, which was based on data from two far more recent CBRE reports from 2016 and 2017. See id. at Cmt. 6.

24. In the Final Results, Commerce "zeroed" negative benefits received by Canadian Solar, vastly inflating Canadian Solar's subsidy margin, by not offsetting Canadian Solar's purchases made at prices above benchmark prices in its calculation of Canadian Solar's benefits from the aluminum, solar glass, polysilicon and electricity programs, as well as benefits from the Preferential Policy Lending to the Renewable Energy Industry Program. See id. at Cmt. 8.

25. In making its creditworthy determination, Commerce found certain Canadian Solar entities to be uncreditworthy for 2016 despite record evidence that other Canadian Solar affiliates received long-term commercial loans during that period. See id. at Cmt. 9.

26. In the Final Results, Commerce imputed a benefit to Canadian Solar under the Golden Sun Demonstration Program ("GSDP"), using the total sales of Canadian Solar's cross-owned producers as its denominator in its subsidy margin calculation. Id. at Cmt. 11.

27. In the Final Results, Commerce declined to calculate an entered value adjustment ("EVA") for Canadian Solar, going beyond its established six-factor methodology to find that Canadian Solar did not demonstrate that there was a mark-up on all its sales. See id. at Cmt. 12.

## VI. STATEMENT OF THE CLAIMS

### COUNT I

28. Canadian Solar herein incorporates by reference paragraphs 1 through 27, supra, of this complaint.

29. Commerce's decision to impute a benefit to Canadian Solar under the EBCP, based on the application of AFA to the GOC, is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT II**

30. Canadian Solar herein incorporates by reference paragraphs 1 through 29, supra, of this complaint.

31. Commerce's determination that the aluminum extrusions for LTAR program is specific based on the enumeration of six vague industry segments, including the catch-all category "other industries," is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT III**

32. Canadian Solar herein incorporate by reference paragraphs 1 through 31, supra, of this complaint.

33. Commerce's calculation of the benchmark for the aluminum extrusions for LTAR program using the average of IHS and Comtrade data, despite evidence that the spectrum of goods captured in the Comtrade data is overbroad, is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT IV**

34. Canadian Solar herein incorporates by reference paragraphs 1 through 33, supra, of this complaint.

35. Commerce's use of AFA to find the electricity LTAR program was specific by selectively sampling the highest provincial electricity rates based on the alleged failure of the GOC to provide certain requested information is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT V**

36. Canadian Solar herein incorporates by reference paragraphs 1 through 35, supra, of this complaint.

37. Commerce's inclusion of electricity subsidy benefits for Canadian Solar calculated after January 1, 2016, despite record evidence that the GOC lacked control over provincial pricing policy following this date, is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT VI**

38. Canadian Solar herein incorporates by reference paragraphs 1 through 37, supra, of this complaint.

39. Commerce's reliance on a "tier two" benchmark to calculate the benefit received by Canadian Solar under the polysilicon for LTAR program, when data on the record supports the calculation of a preferred "tier one" benchmark, is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT VII**

40. Canadian Solar herein incorporates by reference paragraphs 1 through 39, supra, of this complaint.

41. Commerce's use of a nearly decade-old CBRE Thailand land report to calculate its benchmark price for the land for LTAR program, instead of a preferred tier-two report with more recent 2016 and 2017 world-wide market average prices, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT VIII

42. Canadian Solar herein incorporates by reference paragraphs 1 through 41, supra, of this complaint.

43. Commerce's finding that certain Canadian Solar entities were uncreditworthy during 2016, despite evidence establishing that other Canadian Solar affiliates received commercial long-term loans that year, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT IX

44. Canadian Solar herein incorporates by reference paragraphs 1 through 43, supra, of this complaint.

45. Commerce's selected denominator for its GSDP CVD subsidy rate calculation did not reflect the total sales of all of Canadian Solar's cross-owned entities and, therefore, is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT X

46. Canadian Solar herein incorporates by reference paragraphs 1 through 45, supra, of this complaint.

47. Commerce's use of zeroing in its aluminum, solar glass, polysilicon, loan, and electricity subsidy calculations is not based on substantial evidence and is otherwise not in accordance with law.

## COUNT XI

48. Canadian Solar herein incorporates by reference paragraphs 1 through 47, supra, of this complaint.

49. Commerce's failure to make an EVA to Canadian Solar's denominator in its CVD subsidy rate calculation, despite record evidence establishing that Canadian Solar met Commerce's criteria to make such an adjustment, is not based on substantial evidence and is otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Canadian Solar respectfully prays that this Court:

(1) find that Commerce's actions as described in Counts I-XI are unsupported by substantial evidence and otherwise not in accordance with law;

(2) order Commerce to recalculate the countervailing duty subsidy rate assigned to Canadian Solar in the administrative review by correcting the errors set forth in Counts I-XI;

(4) order Commerce to publish amended Final Results in the Federal Register in accordance with a final decision by this Court in this matter;

(5) order Commerce to issue liquidation instructions to U.S. Customs and Border Protection consistent with this Court's decision; and

(6) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Sarah M. Wyss
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue NW, Suite 810
Washington, DC 20015
202-688-3610 (phone)
trade@mowrygrimson.com
*Counsel to Canadian Solar*

Date: September 24, 2019