## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | | |
|---|---|---|
| CANADIAN SOLAR INC. ET AL., | ) | |
| Plaintiffs, and | ) | |
| CHANGZHOU TRINA SOLAR ENERGY CO., LTD. ET AL., | ) | |
| Consolidated Plaintiffs, and | ) | |
| JINKO SOLAR CO., LTD. ET AL., | ) | Consol. Court No. 19-00178 |
| Plaintiff-Intervenors, | ) | NONCONFIDENTIAL |
| v. | ) | VERSION |
| UNITED STATES, | ) | |
| Defendant, and | ) | |
| SUNPOWER MANUFACTURING OREGON, LLC, | ) | |
| Defendant-Intervenor. | ) | |

**OBJECTIONS TO REMAND RESULTS OF PLAINTIFFS CANADIAN SOLAR INC., CANADIAN SOLAR INTERNATIONAL, LTD., CANADIAN SOLAR MANUFACTURING (LUOYANG) INC., CANADIAN SOLAR MANUFACTURING (CHANGSHU) INC., CANADIAN SOLAR (USA) INC., CSI CELLS CO., LTD., CSI SOLAR POWER (CHINA) INC., CSI SOLAR POWER GROUP CO., LTD., CSI SOLARTRONICS (CHANGSHU) CO., LTD, CSI SOLAR TECHNOLOGIES INC., CSI NEW ENERGY HOLDING CO., LTD., CSI-GCL SOLAR MANUFACTURING (YANCHENG) CO., LTD., CHANGSHU TEGU NEW MATERIALS TECHNOLOGY CO., LTD., CHANGSHU TLIAN CO., LTD. AND SUZHOU SANYSOLAR MATERIALS TECHNOLOGY CO., LTD.**

Jeffrey S. Grimson
Sarah M. Wyss
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

January 12, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

STANDARD OF REVIEW ........................................................................................................... 2

ARGUMENT ................................................................................................................................. 4

   I.    COMMERCE'S FINDING THAT THE PROVISION OF ELECTRICITY AMOUNTS TO A COUNTERVAILABLE SUBSIDY FAILS TO FOLLOW THE COURT'S DIRECTIVE AND IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE............................................... 4

     A.   Commerce Was Statutorily Required, and Failed, to Identify a Geographical Region that Received Subsidized Electricity Prices ...................................................................... 5

     B.   Commerce's Reliance on AFA Was Not Supported by Substantial Evidence in the First Instance as No Gap Existed on the Record........................................................................ 13

     C.   Commerce's Benchmark Construction Demonstrates that Commerce Failed to Designate a Subsidized Geographical Region......................................................................... 19

     D.   Commerce Could Have Designated a Geographical Region Based on the Information on the Record......................................................................................................................... 25

     E.   Commerce's Benchmark Construction Is Arbitrary and Capricious by Nonsensically Treating a Single Factory as Located in Multiple Locations................................................. 29

     F.   Conclusion................................................................................................................ 31

CONCLUSION............................................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

AG der Dillinger Huttenwerke v. United States,
28 CIT 94, 310 F. Supp. 2d 1347 (2004) ........................................................................... 3

Al Tech Specialty Steel Corp. v. United States,
28 CIT 1468 (2004) ................................................................................................ 6, 7, 8, 9

Al Tech Specialty Steel Corp. v. United States,
29 CIT 276, 366 F. Supp. 2d 1236 (2005) ...................................................................... 22

Archer Daniels Midland Co. v. United States,
__ CIT __, 917 F. Supp. 2d 1331 (2013) ....................................................................... 15

BMW of N. Am. LLC v. United States,
926 F.3d 1291 (Fed. Cir. 2019) ...................................................................................... 15

Canadian Solar Inc. v. United States,
No. 19-00178, 2021 Ct. Intl. Trade LEXIS 115 (Ct. Int'l Trade Sep. 3, 2021) .................... 1, 4, 12

Canadian Solar, Inc. v. United States,
918 F.3d 909 (Fed. Cir. 2019) ................................................................................... 3, 29

Canadian Solar, Inc. v. United States,
No. 18-00184, 2020 Ct. Intl. Trade LEXIS 157 (Ct. Int'l Trade Oct. 19, 2020) ............. 12, 19, 26

Changzhou Trina Solar Energy Co. v. United States,
__ CIT __, 352 F. Supp. 3d 1316 (2018) ............................................................. passim

Changzhou Trina Solar Energy Co. v. United States,
__ CIT __, 359 F. Supp. 3d 1329 (2019) ........................................................................ 7

Changzhou Trina Solar Energy Co. v. United States,
__ CIT __, 466 F. Supp. 3d 1287 (2020) ........................................................... 11, 12, 19

Changzhou Trina Solar Energy Co. v. United States,
975 F.3d 1318 (Fed. Cir. 2020) ......................................................................................... 3

Changzhou Trina Solar Energy Co. v. United States,
No. 17-00198, 2019 Ct. Intl. Trade LEXIS 138 (Ct. Int'l Trade Nov. 8, 2019) ............................. 4

Clearon Corp. v. United States,
__ CIT __, 474 F. Supp. 3d 1339 (2020) ............................................................... 25, 26

Clearon Corp. v. United States,
No. 17-00171, 2021 Ct. Intl. Trade LEXIS 56 (Ct. Int'l Trade May 6, 2020) ........................... 26

Consol. Edison Co. v. NLRB,
305 U.S. 197 (1938) ......................................................................................... 3

Diamond Sawblades Mfrs. Coal. v. United States,
986 F.3d 1351 (Fed. Cir. 2021) .......................................................................... 13, 14

F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States,
216 F.3d 1027 (Fed. Cir. 2000) ............................................................................. 30

Fine Furniture (Shanghai) Ltd. v. United States,
748 F.3d 1365 (Fed. Cir. 2014) ............................................................................. 15

Geneva Steel v. United States,
20 CIT 7, 914 F. Supp. 563 (1996) .......................................................................... 9

Guizhou Tyre Co. v. United States,
__ CIT __, 523 F. Supp. 3d 1312 (2021) ................................................................... 14

Guizhou Tyre Co. v. United States,
__ CIT __, 415 F. Supp. 3d 1335 (2019) ............................................................ 7, 25, 26

Huayin Foreign Trade Corp. v. United States,
322 F.3d 1369 (Fed. Cir. 2003) .............................................................................. 3

In re Gartside,
203 F.3d 1305 (Fed. Cir. 2000) ............................................................................. 29

Inland Steel Indus. v. United States,
188 F.3d 1349 (Fed. Cir. 1999) .............................................................................. 8

Ipsco, Inc. v. United States,
899 F.2d 1192 (Fed. Cir. 1990) .............................................................................. 7

King v. Burwell,
576 U.S. 473 (2015) ........................................................................................ 11

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,
463 U.S. 29 (1983) ................................................................................................ 3

NMB Sing. Ltd. v. United States,
28 CIT 1252, 341 F. Supp. 2d 1327 (2004) ......................................................... 2

Royal Thai Gov't v. United States,
__ CIT __, 441 F. Supp. 2d 1350 (2006) ............................................................. 9

Samsung Elecs. Co. v. United States,
__ CIT __, 973 F. Supp. 2d 1321 (2014) ...................................................... 6, 8, 9

SolarWorld Ams., Inc. v. United States,
910 F.3d 1216 (Fed. Cir. 2018) ............................................................................ 3

Zhejiang Dunan Hetian Metal Co. v. United States,
652 F.3d 1333 (Fed. Cir. 2011) .......................................................................... 14

**Statutes**

19 U.S.C. § 1516a ................................................................................................. 3

19 U.S.C. § 1677 ......................................................................................... passim

19 U.S.C. § 1677e ......................................................................................... 10, 11

**Regulations**

19 C.F.R. § 351.308 ............................................................................................ 13

19 C.F.R. § 351.511 ............................................................................................ 22

**Other Authorities**

Countervailing Duties, 63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998) .................... 7, 22

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the
  People's Republic of China: Final Results of Countervailing Duty Administrative Review and
  Rescission of Review, in Part; 2016, 84 Fed. Reg. 45,125 (Dep't Commerce Aug. 28, 2019) 16

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the
  People's Republic of China: Preliminary Results of Countervailing Duty Administrative
  Review and Intent To Rescind the Review, in Part; 2016, 84 Fed. Reg. 5,051 (Dep't
  Commerce Feb. 20, 2019) ................................................................................. 15

Designate, MERRIAM-WEBSTER, https://www.merriam-
        webster.com/dictionary/designated?src=search-dict-box ........................................................ 6

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R.
        Doc. No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N. 4040.............................................. 7

Plaintiffs Canadian Solar Inc., Canadian Solar International, Ltd., Canadian Solar Manufacturing (Luoyang) Inc., Canadian Solar Manufacturing (Changshu) Inc., CSI Cells Co., Ltd., CSI Solar Power (China) Inc., CSI Solar Power Group Co., Ltd., CSI Solartronics (Changshu) Co., Ltd., CSI Solar Technologies Inc., CSI New Energy Holding Co., Ltd., CSI-GCL Solar Manufacturing (Yancheng) Co., Ltd., Changshu Tegu New Materials Technology Co., Ltd., Changshu Tlian Co., Ltd. and Suzhou Sanysolar Materials Technology Co., Ltd., producers and exporters of the subject merchandise, and Canadian Solar (USA) Inc., an importer of the subject merchandise (collectively, "Canadian Solar"), submit these comments in opposition to the remand redetermination filed by the Department of Commerce ("Commerce") in Canadian Solar Inc. v. United States, Consol. Ct. No. 19-00178, Final Results of Redetermination Pursuant to Court Order (Dec. 13, 2021), ECF 130  ("Remand").

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court remanded Commerce's Final Results in the fifth administrative review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from China for its reconsideration of the following five issues: 1) Commerce's determination to average U.N. Comtrade and IHS Markit data in calculating the benchmark for the aluminum for less than adequate remuneration ("LTAR") program, 2) Commerce's determination to decline to use Canadian Solar's imports of polysilicon as a tier-one benchmark, 3) Commerce's determination that the electricity LTAR program ("electricity program") is a specific subsidy, 4) Commerce's determination that Canadian Solar benefitted from the Export Buyer's Credit Program ("EBCP") and 5) Commerce's determination not to grant Canadian Solar an entered value adjustment.  See Canadian Solar Inc. v. United States, No. 19-00178, 2021 Ct. Intl. Trade LEXIS 115, at *7-8, *34-35, *45-46 (Ct. Int'l Trade Sep. 3, 2021) ("Remand Order").  Canadian Solar

objects to Commerce's remand redetermination related to the electricity program and does not object to Commerce's remand redetermination on the remaining issues.[1]

Commerce's determination upon remand that the electricity program was regionally specific was not in accordance with law because it failed to designate a geographical region that received subsidized electricity prices nor was Commerce's reliance on AFA supported by substantial evidence because the record demonstrates that no region received subsidized electricity prices. Further, even if Commerce's regional specificity determination was lawful, Commerce's benchmark calculation was nonetheless not in accordance with law because Commerce arbitrarily applied the highest provincial electricity rates in multiple provinces to a factory located in a single province without any rational connection to the locations where the mandatory respondents produced solar cells. This Court must reject Commerce's redetermination on this issue, refrain from allowing further agency consideration and, instead, instruct Commerce to remove the subsidy rate assigned to Canadian Solar under the electricity program. Although Canadian Solar's electricity program argument may be familiar to the Court from its review in the appeal of the previous administrative review of the same countervailing duty ("CVD") order, the fulsome argument provided herein is warranted for two reasons: 1) this exact issue remains on appeal at the Court of Appeals for the Federal Circuit ("Federal Circuit") and 2) the precise statutory interpretation argument presented below has not yet been reviewed by the Court.

## STANDARD OF REVIEW

The Court reviews remand determinations for compliance with its remand order. See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004). Further, any

---

[1] Although Canadian Solar agrees with Commerce's ultimate remand determination to remove the benefit associated with the EBCP, Canadian Solar maintains that Commerce's determination that it could not verify the EBCP remains unreasonable.

factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law.  See 19 U.S.C. § 1516a(b)(1)(B) (2016); see also AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

Substantial evidence requires "more than a mere scintilla," see, e.g., Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (internal citation omitted), and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Moreover, substantial evidence supporting an agency determination must be based on the whole record, and the court shall consider not only the information that supports the agency's decision but also whatever in the "record fairly detracts from the substantiality of the evidence."  Changzhou Trina, 975 F.3d at 1326 (quoting SolarWorld Ams., Inc. v. United States, 910 F.3d 1216, 1222 (Fed. Cir. 2018)).

Further, the arbitrary and capricious standard requires that "Commerce's determination is the product of reasoned decisionmaking" or "a reasoned explanation."  Canadian Solar, Inc. v. United States, 918 F.3d 909, 917 (Fed. Cir. 2019) (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43-44 (1983)).

In reviewing Commerce's interpretation of its governing statutes, the court applies the two-prong standard established in Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-43 (1984).  First, the court determines whether Congress' intent can be ascertained; if it can, the court "must give effect to the unambiguously expressed intent of Congress."  Id. at 843. Second, the court determines whether the agency's interpretation of the statute is permissible.  See id. at 843-44. The Court will only uphold agency interpretations that are reasonable.  See id. at 844.

3

**ARGUMENT**

I.   **COMMERCE'S FINDING THAT THE PROVISION OF ELECTRICITY AMOUNTS TO A COUNTERVAILABLE SUBSIDY FAILS TO FOLLOW THE COURT'S DIRECTIVE AND IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

This Court granted Commerce's request for voluntary remand to reconsider "its application of adverse facts available {("AFA")} in its specificity finding for the {electricity program}." Remand Order, 2021 Ct. Intl. Trade LEXIS 115, at *7. This Court noted that "{t}he administrative records of the Third, Fourth, and Fifth Administrative Reviews and the Government's legal rationales are similar and thus the determination at hand suffers from essentially the same deficiencies that the court noted in these prior opinions" and instructed Commerce to "consult with these prior opinions and revaluate its decision on these three issues accordingly." Id. In its judgment relating to the third administrative review, this Court set forth that "AFA is not a magic phrase that permits Commerce to skip an analysis of the record." Changzhou Trina Solar Energy Co. v. United States, __ CIT __, __, 352 F. Supp. 3d 1316, 1342 (2018) ("Trina I"). Instead, this Court held that

> Commerce must actually engage in an analysis of the information on the record and explain how adverse inferences lead to the conclusion that the provision of electricity in China is a countervailable subsidy. Otherwise stated, Commerce must connect the dots: how does the {Government of China ("GOC")}'s partial response—or failure to respond fully—reasonably lead to a finding of a specific subsidy even with use of AFA?

Id.; see also Changzhou Trina Solar Energy Co. v. United States, No. 17-00198, 2019 Ct. Intl. Trade LEXIS 138, *33 (Ct. Int'l Trade Nov. 8, 2019) ("Trina II") (holding that Commerce must "expressly set forth its reasoning under the statutory steps for drawing adverse inferences to fill record gaps").

4

For the first time in this review, and consistent with its remand redeterminations in the third and fourth administrative reviews, Commerce has now clarified that it finds that the electricity program was regionally specific under 19 U.S.C. § 1677(5A)(D)(iv).   See Remand at 19. Specifically, Commerce determined pursuant to AFA that "the provision of electricity is a countervailable subsidy program whereby the central Chinese government, through the NDRC in Beijing, sets different prices in different regions under its authority (i.e. the provinces) without any commercial or market considerations but instead for development purposes."   Id. at 24. Commerce's specificity finding was not in accordance with law because it failed to follow its statutory mandate to designate a geographical region that received subsidized electricity prices. Commerce thereby violated this Court's order to consult with its prior opinions where it set forth that Commerce cannot use AFA as a "magic phrase" to skirt its statutory obligations.   See generally Trina I, __ CIT at __, 352 F. Supp. 3d at 1342.   Further, Commerce's reliance on AFA was improper in the first instance as the record establishes that no geographical region received subsidized electricity prices.   Commerce, therefore, violated this Court's order by failing to "engage in an analysis of the information on the record."   Id.   Finally, Commerce's benchmark calculation was not in accordance with law because it arbitrarily applied a broad regional subsidy from various provinces, which no user in China can escape, to a factory located in a single province.

### A.  Commerce Was Statutorily Required, and Failed, to Identify a Geographical Region that Received Subsidized Electricity Prices

Section 1677(5A)(D)(iv) sets forth that a subsidy is regionally specific where it "is limited to an enterprise or industry located within a designated geographical region within the jurisdiction of the authority providing the subsidy."   19 U.S.C. § 1677(5A)(D)(iv) (emphasis added).   Here, even if Commerce could use AFA to make its specificity determination, both the plain language

of the statute and subsequent Court precedent are unambiguous – Commerce must designate a geographical region when making a determination that a subsidy is regionally specific under 19 U.S.C. § 1677(5A)(D)(iv).  See Remand at 24; see also Trina I, __ CIT at __, 352 F. Supp. 3d at 1342 ("Otherwise stated, Commerce must connect the dots: how does the GOC's partial response—or failure to respond fully—reasonably lead to a finding of a specific subsidy even with use of AFA?" (emphasis added)).  Commerce's remand redetermination is devoid of any such designation of a subsidized geographical region.  See Remand at 18-24.  Instead of designating a geographical region, Commerce inferred that "{t}he amount of the subsidy . . . {is} the difference between what the respondent is paying, and the highest tariffs set for any province."  Id. at 24.  Commerce's failure to designate such a geographical region thereby rendered its decision to countervail the electricity program as not in accordance with law.

Commerce, under the guise of AFA, shirked its statutory mandate to identify a geographical region that received subsidized electricity prices.  "Designate" means to "indicate and set apart for a specific purpose, office, or duty" or "to distinguish as to class."  Designate, MERRIAM-WEBSTER,  https://www.merriam-webster.com/dictionary/designated?src=search-dict-box (last visited Aug. 13, 2021)); see also Al Tech Specialty Steel Corp. v. United States, 28 CIT 1468, 1511 (2004) ("'Designated' is defined as to 'to indicate or specify, point.'" (quoting The American Heritage Dictionary of the English Language (4th Ed. 2000)).  This Court has previously concluded that "the statute's placement of the qualifier 'designated' before 'geographic region' would seem to require some sort of an affirmative indication of a limitation to a specified geographical region, if a subsidy is to be considered *de jure* specific on that basis."  Al Tech, 28 CIT at 1511; see also Samsung Elecs. Co. v. United States, __ CIT __, __, 973 F. Supp. 2d 1321, 1328 (2014) (holding that 19 U.S.C. § 1677(5A)(D)(iv) requires that "the authority providing the

subsidy limit the subsidy's availability to a designated geographical area" (quotations omitted)). The plain language of the statute, thus, requires Commerce to designate a geographical region that received subsidized electricity prices.

The statutory requirement that Commerce must designate a geographical region when making a regional specificity finding aligns with the underlying purpose of the specificity requirement to "ensure that subsidies that are distributed very widely throughout an economy are not countervailed." Countervailing Duties, 63 Fed. Reg. 65,348, 65,357 (Dep't Commerce Nov. 25, 1998) ("Final Rule"); see also Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, at 913 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4230 ("Consistent with longstanding U.S. practice, government assistance that is both generally available and widely and evenly distributed throughout the jurisdiction of the subsidizing authority is not an actionable subsidy."). "The Court cannot sustain {Commerce}'s exercise of administrative discretion if it contravenes statutory objectives." Ipsco, Inc. v. United States, 899 F.2d 1192, 1195 (Fed. Cir. 1990); see also Guizhou Tyre Co. v. United States, __ CIT __, __, 415 F. Supp. 3d 1335, 1342 (2019) ("The law does not permit Commerce to circumvent the statutory requirements of the CVD statute because a respondent fails to cooperate; nor is Commerce 'relieve{d} {} from relying on some facts to make the requisite determinations to satisfy the elements of 19 U.S.C. § 1677(5).'" (quoting Changzhou Trina Solar Energy Co. v. United States, __ CIT __, __, 359 F. Supp. 3d 1329, 1340 (2019)). By enacting 19 U.S.C. § 1677(5A)(D)(iv), Congress required Commerce to designate a geographical region that received subsidized prices in order to "distinguish between subsidies that provide generally available benefits to society (which have little trade distorting effect) from those subsidies that are aimed at specific companies, industries or sectors, and thus distort trade significantly." Al Tech, 28 CIT at 1512; see also

Samsung, __ CIT at __, 973 F. Supp. 2d at 1328.  By contrast, "foreign governments are enabled to confer benefits on their citizenry generally without running the risk that such a benefit will be countervailable in exported products."  Inland Steel Indus. v. United States, 188 F.3d 1349, 1355 (Fed. Cir. 1999).  Commerce's obligation to designate a geographical region that received subsidized electricity prices ensures that the electricity program is a targeted subsidy as compared to a generally available subsidy that is not countervailable.

Canadian Solar's interpretation of the statute, i.e., that Commerce must designate a geographical region that received subsidized prices when making a regional specificity finding is in line with court precedent.  For instance, in Al Tech, the Court remanded Commerce's regional specificity determination because Commerce failed to identify a designated geographical region.  See 28 CIT at 1511.  In the underlying administrative proceeding, Commerce found that certain funding supplied by the European Union ("EU") for vocational training and employment assistance (known as "ESF Objective 4") was de jure specific.  See id. at 1509.  Commerce reasoned that although funding was available to all EU members, the authority issued a unique operating document to each EU member individually, making it regionally specific.  See id. Further, Commerce determined that the separate Italian funding was regionally specific because it was "limited on a regional basis to the center and north of Italy."  See id. (internal quotations and citation omitted).  Examining the actual evidence on the record, the Court rejected Commerce's reasoning in both instances.  Id.  Concerning the EU-wide program, the Court concluded that the mere fact that the EU works with each member country individually to coordinate specific details does not mean that the EU limits those funds "on a regional basis."  Id. at 1510 (internal citations omitted).  Likewise, concerning the Italian funds, the Court found that Commerce's determination that the authority does not provide ESF Objective 4 funds to southern Italy does not meet the

threshold of designating a geographical region when the underlying program itself does not include any such geographical limitations.  See id. at 1511-12.  In short, the Court confirmed in Al Tech that, pursuant to 19 U.S.C. § 1677(5A)(D)(iv), Commerce must designate a particular region that is receiving subsidized prices.

In contrast to Al Tech, where the Court faulted Commerce for failing to designate a subsidized region, the Court has upheld regional specificity determinations by Commerce where it designates (supported by record evidence) a particular region in a country as receiving subsidies.  See Samsung, __ CIT at __, 973 F. Supp. 2d at 1329 (upholding Commerce's regional specificity determination where the Government of Korea provided "tax credits to companies making investments in a designated region: the area outside the Seoul Metropolitan Area");[2] Royal Thai Gov't v. United States, __ CIT __, __, 441 F. Supp. 2d 1350, 1354-58 (2006) (upholding Commerce's regionality specificity determination where electricity prices outside of Bangkok were lower because of government policy to charge a higher surcharge to the electricity authority in Bangkok).  The Court has also upheld Commerce's refusal to determine that a subsidy is specific where funding is generally available throughout a country.  See Geneva Steel v. United States, 20 CIT 7, 112, 914 F. Supp. 563, 598 (1996) (upholding Commerce's determination that a program was not regionally specific because "companies in various industries in all three administrative regions of Belgium . . . have used the program").

---

[2] Commerce concludes that Samsung supports its specificity finding.  See Remand at 52.  As Commerce correctly notes, the Court in Samsung "sustained Commerce's regional specificity determination for a program limited to companies making investments in the area outside the Seoul Metropolitan area."  Id. (citing Samsung, __ CIT at __, 973 F. Supp. 2d at 1328-29).  In other words, the Court sustained Commerce's specificity finding when it designated a geographical region – namely, the "area outside the Seoul Metropolitan area."  Commerce misunderstands Canadian Solar's argument.  Canadian Solar is not arguing about the size or administration of the designated area or the degree of availability or use within such region.  Canadian Solar instead argues that a geographical region must be designated in the first place regardless of its size.

The commonality in all these cases is that Commerce must designate a subsidized region when determining that a program is specific on a regional basis.  Here, Commerce failed to make any such regional designation.  See Remand at 18-24.  Instead of designating a region, in its remand redetermination, Commerce hid behind AFA to infer that the price "schedules submitted by the GOC constitute a clear factual basis for the inference that the NDRC has subsidized electricity consumers in certain regions by arbitrarily setting different prices across the provinces."  Id. at 24-25.  Commerce's failure to designate a geographical region that received subsidized electricity prices directly conflicts with the plain language and underlying purpose of the statute, as confirmed by court precedent, thereby rendering its remand redetermination not in accordance with law.

Commerce explained that AFA was warranted in this situation because the "GOC failed to provide information that is key to understanding the variation of the electricity prices in China." Remand at 46.  Regardless of whether AFA was warranted, which Canadian Solar contests below, Commerce cannot, as it did here, rely on AFA to evade its mandate to designate a geographical region.  Contrary to Commerce's conclusion that designating a geographical region "go{es} beyond the requirements of applying AFA," id. at 48, not only does the AFA statute not excuse Commerce from designating a geographical region under 19 U.S.C. § 1677(5A)(D)(iv), but it actually requires it.  Under its AFA framework, Commerce's application of AFA relies on a two-step process: (1) Commerce finds that necessary information is missing on the record or an interested party fails to provide certain requested information, and (2) if Commerce makes a finding of non-cooperation, it may use an adverse inference against that non-cooperative party to fill the gap in the record.  See 19 U.S.C. § 1677e(a)-(b).  Under the second step, the statute allows Commerce to "use the facts otherwise available in reaching the applicable determination under

this subtitle." 19 U.S.C. § 1677e(a) (emphasis added); see also 19 U.S.C. § 1677e(b) (using similar language in stating that Commerce "may use an inference that is adverse" but only when "reaching the applicable determination under this subtitle"). Under a Chevron step one analysis, the plain language of the statute is unambiguous and mandates that Commerce may only use AFA to reach the "applicable determination" under the statute and may not skip this step. 19 U.S.C. § 1677e(a)-(b). When "the statutory language is plain," as is the case with 19 U.S.C. § 1677e(a)-(b), the court "must enforce it according to its terms." Arista Networks, Inc. v. Cisco Sys., Inc., 908 F.3d 792, 803 (Fed. Cir. 2018) (quoting King v. Burwell, 576 U.S. 473, 486 (2015)). As set forth above, the "applicable determination" relevant to this case is the designation of a geographical region that received subsidized electricity prices. See 19 U.S.C. § 1677(5A)(D)(iv). Commerce misapplied the AFA statute by failing to reach the applicable determination and, instead, rendered an unlawfully vague determination of regional specificity. Even if Commerce was permitted to make an adverse inference related to the price schedules, such an inference is only lawful if it reaches the "applicable determination" – i.e., the designation of a geographical region that received subsidized electricity prices based on the information contained within the price schedules. By failing to designate a geographical region, Commerce violated the plain language of the statute by not connecting its use of AFA to the applicable determination.

Commerce noted that this Court has previously rejected these arguments in Changzhou Trina Solar Energy Co. v. United States, __ CIT __, __, 466 F. Supp. 3d 1287, 1299-1303 (2020) ("Trina III"). See Remand at 47. Although this Court has previously rejected Canadian Solar's arguments, it has not previously examined Canadian Solar's argument here that, under Chevron step one, Commerce's statutory mandate is unambiguous and, therefore, it must give effect to Congress' expressed intent by designating a geographical region receiving subsidized electricity

11

prices even when relying on AFA.  See Trina III, __ CIT at __, 466 F. Supp. 3d at 1300 (noting that Canadian Solar argued that "Commerce has failed to identify that any particular region is receiving electricity for LTAR" but not specifically addressing the statutory requirement to designate such a geographical region even under AFA).  Further, Canadian Solar presented this precise statutory interpretation argument to the Federal Circuit in the appeal of the fourth administrative review of Commerce's countervailing duty order on solar cells from China.  See Canadian Solar, Inc. v. United States, No. 18-00184, 2020 Ct. Intl. Trade LEXIS 157 (Ct. Int'l Trade Oct. 19, 2020) ("Canadian Solar II"), appealed to the Federal Circuit, appeal docketed, No. 21-1434 (Fed. Cir. Jan, 6, 2021).  A decision is pending at the Federal Circuit.

In sum, under Chevron step one, the plain language of 19 U.S.C. § 1677(5A)(D)(iv) is unambiguous and requires that Commerce designate a geographical region when making a regional specificity finding even under AFA.  In granting Commerce's request for a voluntary remand, the Court instructed Commerce "to consult these prior opinions and reevaluate its decisions."  Remand Order, 2021 Ct. Intl. Trade LEXIS 115, at *7.  As set forth above, the Court instructed Commerce to "connect the dots" on how the GOC's failure to submit certain information can "reasonably lead to a specific subsidy even with the use of AFA."  Trina I, __ CIT at __, 352 F. Supp. 3d at 1342.  By hiding behind AFA, instead of connecting the dots on how differing prices among the provinces can lead to a designation of a geographical region that received subsidized electricity price, Commerce failed to follow this Court's instructions to consult its prior opinions.  Commerce's failure to meet its statutory obligation to designate a geographical region that received subsidized electricity prices thereby renders Commerce's remand redetermination unlawful.

12

**B.  Commerce's Reliance on AFA Was Not Supported by Substantial Evidence in the First Instance as No Gap Existed on the Record**

Commerce's regional specificity finding was not only contrary to law due to its failure to designate a geographical region that received subsidized electricity prices, but Commerce's reliance on AFA was not supported by substantial evidence in the first instance.  Here, Commerce's disregarded information establishing that no region received subsidized electricity prices by performing only a cursory analysis of the electricity price schedules submitted by the GOC.  See Remand at 20 (noting merely that "{t}here is no dispute that electricity prices vary from province to province in China"); see also id. at 47 ("Commerce continues to find that the program is regionally specific because the record indicates that the GOC at the national level (i.e., the NDRC) has arbitrarily set varying prices across provinces.").  When fully examined, the record in this case does not support Commerce's regional specificity finding and, therefore, Commerce's remand determination continues to be unsupported by substantial evidence.

Commerce wrongly failed to conduct even a basic analysis of the price schedules submitted by the GOC, which on their face, as discussed below, demonstrate that no region in China received subsidized electricity prices.  Commerce determined that it "cannot identify which provinces are being subsidized by the GOC, due to the GOC's failure to provide Commerce with the requested information."  Remand at 48.  Even when relying on AFA, however, Commerce cannot disregard all information on the record that rebuts its adverse inference.  See 19 C.F.R. § 351.308(e) (Commerce cannot "decline to consider information that is submitted by an interested party and is necessary to the determination"); see also Diamond Sawblades Mfrs. Coal. v. United States, 986 F.3d 1351, 1365 (Fed. Cir. 2021) (setting forth that Commerce must conduct "an information-specific consideration of probativeness rather than any blanket disregard of all information supplied by a person whenever some of the information supplied by that person is unreliable");

Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011). "Commerce is empowered to use adverse inferences only in selecting from among the facts otherwise available, it may not do so in disregard of information of record that is not missing or otherwise deficient." Zhejiang Dunan, 652 F.3d at 1348 (citation omitted). "The use of facts otherwise available, moreover, is only appropriate to fill gaps when Commerce must rely on other sources of information to complete the factual record." Id. at 1346 (citation omitted). In both Diamond Sawblades and Zhejiang Dunan, the Federal Circuit held that Commerce cannot apply AFA when other existing facts can fill the alleged gap on the record. See Diamond Sawblades, 986 F.3d at 1365-66 (remanding Commerce's reliance on AFA where Commerce disregarded all of a respondent's country of origin information when only a small sub-set of this information was impacted by a methodological error); Zhejiang Dunan, 652 F.3d at 1348 (holding that the Court erred in concluding that Commerce properly applied AFA when Commerce could have calculated a transaction specific dumping margin without the allegedly missing information the record). Even under an AFA framework, Commerce must "show that only the withheld information can fill the gap." Guizhou Tyre Co. v. United States, __ CIT __, __, 523 F. Supp. 3d 1312, 1361 (2021) (internal citation quotations and citation omitted). Again, 19 U.S.C. § 1677(5A)(D)(iv) requires that Commerce designate a geographical region when making a regional specificity finding. Such a determination requires that Commerce analyze the degree of availability of a subsidy within different regions in China. This, in turn, requires that Commerce analyze the underlying price schedules beyond a mere cursory conclusion that price variation exists among the provinces. See Remand at 24-25 ("{T}he schedules submitted by the GOC constitute a clear factual basis for the inference that the NDRC has subsidized electricity consumers in certain regions by arbitrarily

setting different prices across the provinces.").  Otherwise, Commerce could not designate a region that received subsidized prices.

The requirement that Commerce examine the full record, including conducting a basic facial analysis of the price schedules submitted by the GOC, is also necessary to avoid applying an adverse inference against a cooperating respondent.  Commerce found that it's use of AFA was appropriate based on the holdings in Archer Daniels Midland Co. v. United States, __ CIT __, 917 F. Supp. 2d 1331 (2013) and Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365 (Fed. Cir. 2014), that Commerce may apply an adverse inference against a government even when it has a "collateral impact" on a cooperating respondent.  See Remand at 49-50 (citing Archer Daniels, __ CIT at __, 917 F. Supp at 1331, 1342 and Fine Furniture, 748 F.3d at 1372-73).  Commerce, however, failed to grapple with the exception to the holding in both of these cases; although Commerce can apply an adverse inference to a cooperating respondent, it should "seek to avoid such impact if relevant information exists elsewhere on the record."  Trina I, 352 F. Supp. 3d at 1325 (quoting Archer Daniels, __ CIT at __, 917 F. Supp. 2d at 1342).  This is consistent with the underlying remedial nature of U.S. trade law that is designed "to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."  BMW of N. Am. LLC v. United States, 926 F.3d 1291, 1297 (Fed. Cir. 2019) (citation omitted).  Here, Canadian Solar fully complied with Commerce's requests by submitting information on its electricity usage.  See generally Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Intent To Rescind the Review, in Part; 2016, 84 Fed. Reg. 5,051 (Dep't Commerce Feb. 20, 2019) (P.R. 161), and accompanying Prelim. Calc. Mem. at 3 (Public Version) (P.R. 219) ("However, notwithstanding the GOC's failure to provide requested information, we

preliminarily found the usage information reported by the respondent companies to be reliable."), unchanged in Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review and Rescission of Review, in Part; 2016, 84 Fed. Reg. 45,125 (Dep't Commerce Aug. 28, 2019) (P.R. 250). Given that Canadian Solar fully cooperated with Commerce's requests, Commerce must avoid applying an adverse inference against Canadian Solar if other information exists elsewhere on the record. Such relevant information existed on the record in the form of price schedules demonstrating on their face that any allegedly subsidized electricity prices are generally available throughout China.

Here, when Commerce fully examines the record instead of merely relying on AFA, the only reasonable conclusion is that the GOC is not subsidizing a single region or group of regions with preferential electricity rates. See Mem. from Gene H. Calvert to the File re: Calculations for the Final Remand Redetermination at Attach I, Electricity_BM tab (Dec. 13, 2021) (Business Proprietary Document) ("CS Remand Calc. Mem.") (REM C.R. 6-7)[3]; see also Letter on Behalf of Canadian Solar to Dep't of Commerce re: Comments on Remand Redetermination at Attach. I (Nov. 9, 2021) (Business Proprietary Document) ("CS Remand Cmts.") (REM C.R. 5) (including the information from the Commerce's draft remand recalculation memorandum that remained unchanged in its remand redetermination). Specifically, the record evidence shows:

- [ 

---

[3] Documents contained on the Administrative Record Index for the remand proceeding are referenced as REM C.R. XX or REM P.R. XX. Documents cited from the Administrative Record Index from the underlying review will continue to be cited as C.R. XX or P.R. XX.



].[4]

See CS Remand Cmts, at Attach. I (REM C.R. 5) (summarizing electricity rates by province as included in Commerce's remand redetermination calculation memorandum).[5]

Further, the below table shows the provinces with the lowest, potentially subsidized, rates in seven breakout categories:[6]

---

[4] Although the primary source electricity schedules are public, we bracket here consistent with Commerce's bracketing of the rate summaries shown in Canadian Solar's remand redetermination calculations.

[5] In its benchmark calculation, Commerce [ ███████ ]. See CS Remand Calc. Mem. at Attach I, Electricity_BM tab (REM C.R. 6-7). Canadian Solar presumes that this [ ███ ] is the result of the GOC reporting that "some provinces . . . adjusted their electricity tariff schedules in the middle of 2016." Letter on Behalf of GOC to Commerce re: GOC Initial CVD Questionnaire Response at 71 (June 19, 2018) (Public Version) ("GOC QR") (P.R. 73-76). Commerce, however, mistakenly [ ███████████ ]. See CS Remand Calc. Mem. at Attach I, Electricity_BM tab (REM C.R. 6-7). Instead, [ ██████████████████████████ ███████ ]. This is consistent with the GOC's explanation that "{f}or the electricity price adjustment in the middle of 2016, each province generated its own adjusted electricity price after independently eliminating preferential electricity prices for production of fertilizer. The adjusted electricity tariff schedules were approved by the government of each province and submitted to the NDRC for the record." GOC QR at 73-74 (emphasis added) (P.R. 73-76). Accordingly, Commerce [ █████████ ]. In these opposition comments, as Canadian Solar also noted it its comments on Commerce's draft remand results, Canadian Solar's analysis of these comments is based upon this correct interpretation of the electricity schedules. See CS Remand Cmts. at 21-22, n. 3 (REM C.R. 5).

[6] These are the same categories used by Commerce in constructing its benchmark. See CS Remand Calc. Mem. at Attach I, Electricity_BM tab (REM C.R. 6-7).

| Lowest Electricity Rates (January 1, 2016 through May 31, 2016) | | |
|---|---|---|
| **1-10 KV** | **Large Scale Industry** | **Ordinary/General Industry and Commercial** |
| **Normal** | [ ▮ | ▮ ▮ ▮ ▮ |
| **Sharp** | ▮ ▮ | ▮ |
| **Peak** | ▮ | ▮ |
| **Valley** | ▮ | ▮ |
| **Basic Fee - Maximum Demand** | ▮ ▮ ▮ | ▮ ▮ |
| **Basic Fee - Transformer Capacity** | ▮ | ▮ ] |

| Lowest Electricity Rates (June 1, 2016- December 31, 2016) | | |
|---|---|---|
| **1-10 KV** | **Large Scale Industry** | **Ordinary/General Industry and Commercial** |
| **Normal** | [ ▮ | ▮ ▮ ▮ ▮ |
| **Sharp** | ▮ ▮ | ▮ |
| **Peak** | ▮ | ▮ |
| **Valley** | ▮ | ▮ |
| **Basic Fee - Maximum Demand** | ▮ ▮ ▮ | ▮ ▮ |
| **Basic Fee - Transformer Capacity** | ▮ | ▮ ] |

See CS Remand Cmts. at Attach. I (REM C.R. 5) (identifying the lowest rates for each user category in green). This information shows that the lowest (i.e. hypothetically subsidized) electricity price varies greatly depending on user category and illustrates, without inference, that there is no single province or geographical region that is receiving subsidized electricity rates. While Commerce may find that these facts illustrate provincial price variation, they do not

illustrate, even under AFA, that any "designated geographical region" is subsidized as is required by the statute.  19 U.S.C. § 1677(5A)(D)(iv).

Canadian Solar recognizes that this Court has sustained Commerce's similar conclusions on this issue on nearly identical facts in the third administrative review, see Trina III, __ CIT at __, 466 F. Supp. 3d at 1299-1303, but it respectfully continues to maintain that Commerce's specificity finding concerning the electricity program was not supported by substantial evidence because the record demonstrates that no region received subsidized electricity prices.  Further, similar to the Chevron step one argument explained above, Canadian Solar presented this identical issue to the Federal Circuit in the fourth administrative review of Commerce's countervailing duty order on solar cells from China.  See Canadian Solar II, 2020 Ct. Intl. Trade LEXIS 157 (Oct. 19, 2020), appealed to the Federal Circuit, Appeal No. 21-1434.  A decision is pending at the Federal Circuit.

In sum, it cannot be the case that every province confers a benefit of lower electricity rates than every other province, yet that is precisely the flawed logic in Commerce's analysis. Commerce's claim that "the NDRC has subsidized electricity consumers in certain regions by arbitrarily setting difference prices across the provinces" is flawed where the price schedules clearly demonstrate on their face that no one region receives an alleged electricity subsidy. Remand at 25.

### C. Commerce's Benchmark Construction Demonstrates that Commerce Failed to Designate a Subsidized Geographical Region

The flaws in Commerce's analysis are further illustrated by its benchmark calculation, which essentially determined that all areas in China received subsidized electricity rates.  By designating all regions as receiving subsidized electricity rates, the natural inverse is that Commerce failed to designate a particular region that was not subsidized.  Commerce's benchmark

calculation, therefore, illustrates that Commerce has failed to follow its statutory mandate to designate a subsidized geographical region, rendering its regional specificity finding unlawful.

Commerce's construction of the benchmark for the electricity program allegedly represents an "unsubsidized region" that contradicts Commerce's regional specificity finding. Commerce's unsubsidized benchmark region is a mix and match of the highest prices in various categories and fees from different provinces. See CS Remand Cmts. at Attach I (Business Proprietary Document) (REM C.R. 5). Rather than performing its obligation pursuant to this Court's directive to articulate a rational AFA determination related to this program, Commerce unlawfully determined that, in effect, all areas in China received subsidized electricity rates, which is the antithesis of a specificity finding. Taking the inverse of the charts above, the below charts show the highest rates on the record, which Commerce uses as the benchmarks to calculate benefit from this program and illustrates the absurdity of Commerce's determination:

| Highest Electricity Rates (January 1, 2016 through May 31, 2016) | | |
|---|---|---|
| **1-10 KV** | **Large Scale Industry** | **Ordinary/General Industry and Commercial** |
| **Normal** | [ ▮▮▮▮ | ▮▮▮▮▮▮▮▮▮ |
| **Sharp** | ▮▮▮ | ▮▮▮ |
| **Peak** | ▮▮▮ | ▮▮▮ |
| **Valley** | ▮▮▮ | ▮▮▮ |
| **Basic Fee - Maximum Demand** | ▮▮▮ | ▮▮▮ |
| **Basic Fee - Transformer Capacity** | ▮▮▮▮ <br> ▮▮▮▮▮ | ▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮ ] |

**NONCONFIDENTIAL DOCUMENT**
**CONFIDENTIAL INFORMATION REMOVED**

| Highest Electricity Rates (June 1, 2016 through December 31, 2016) | | |
|---|---|---|
| **1-10 KV** | **Large Scale Industry** | **Ordinary/General Industry and Commercial** |
| **Normal** | [ ███████ | ██████ |
| **Sharp** | ████ | ████ |
| **Peak** | ████ | ████ |
| **Valley** | ████ | ████ |
| **Basic Fee - Maximum Demand** | ███ | █████ |
| **Basic Fee - Transformer Capacity** | █████ ████ ██████ | █████████ ██████ ] |

See id. (highlighting the highest rates in yellow).

Under Commerce's approach, no user escapes the subsidy.  For example, under Commerce's theory, the [ ███████ ] region is not subsidized if you look at normal Large Scale Industry use because that province has the highest rates in that category.  [ ███████ ], however, is subsidized for all other fee rates besides the [ ████████ ], because those fees are lower than the benchmark regions.  This defies logic.  If there is a unified regional electricity subsidy program, as Commerce claims, a region is either subsidized or not but cannot be both at the same time.  In using the above rates as the benchmarks, Commerce creates an imaginary unsubsidized province that has [ █████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████ ] through May 2016 and [ ██ █████████████████████████████████████████████ █████████████████████████████████ ███████████ ] beginning in June 1, 2016 for Large Scale Industry Users.  See CS Remand Cmts. at Attach I (Business Proprietary Document) (REM C.R. 5).[7]  Unlike in quantum

---

[7] As noted above, Commerce incorrectly treated the rate change in the middle of 2016 as [ ██████ ███████████████████████████████████████████████████████

physics where a particle can exist in two places at once, no theoretician of the countervailing duty laws has posited an explanation of how a single Chinese company's level of subsidization could be assessed as if it were located simultaneously in multiple provinces.   For this reason, there is no actual Chinese industrial user that could remain unsubsidized under Commerce's construct. Rather, all users are subsidized under Commerce's determination, which is the antithesis of a reasonable specificity determination under 19 U.S.C. § 1677(5A)(D)(iv).   See Final Rule, 63 Fed. Reg. at 65,357 (establishing that "the purpose of the specificity test is simply to ensure that subsidies that are distributed very widely throughout an economy are not countervailed"); see also Al Tech Specialty Steel Corp. v. United States, 29 CIT 276, 277, 366 F. Supp. 2d 1236, 1238 n. 3 (2005) (finding that a subsidy that is generally available and not aimed at specific companies, industries or sectors, is not countervailable and offered as persuasive authority on the interpretation of 19 U.S.C. § 1677(5A)).

That Commerce failed to designate a subsidized geographical region is also illustrated by the inverse; Commerce failed to designate an unsubsidized region, which comes in the form of benchmark prices under Commerce's CVD calculation.   By definition, a benchmark price for a regional program represents the unsubsidized region with market prices.   See 19 C.F.R. § 351.511(a)(2)(ii) ("If there is no useable market-determined price with which to make the comparison under paragraph (a)(2)(i) of this section, the Secretary will seek to measure the



]. Under Commerce's construction, it creates an imaginary unsubsidized province that has [ ] through May 2016 and [ ] beginning in June 1, 2016 for Large Scale Industry Users.  See CS Remand Calc. Mem. at Attach I, Electricity_BM (REM C.R. 6-7).

adequacy of remuneration by comparing the government price to a world <u>market</u> price." (emphasis

added)).  But under Commerce's logic, where its selected benchmarks reflect a mix and match of

the highest prices in various categories and fees from different provinces, Commerce does not

point to a single region that is not subsidized.  <u>See</u> CS Remand Cmts. at Attach I (Business

Proprietary Document) (REM C.R. 5).  Commerce's application of its non-designation of a region,

shows that, in fact, every single Chinese manufacturer investigated in this review, and historically

in every other proceeding in which the electricity program has been alleged, has been found to be

in a subsidized region.  For instance, the mandatory respondents who reported use of the electricity

programs are in [ ███████████ ] and yet they were all found to be subsidized by the same

regional program.  <u>See</u> Letter on Behalf of Canadian Solar to Dep't of Commerce re: Case Brief

at Attach. 4 (Aug. 2, 2019) (Business Proprietary Document) ("CS Case Br.") (C.R. 332-35)

(noting that respondent companies are located in [ ████████████████████████

███████ ]).  Indeed, the map below sets forth the location of the mandatory respondents who

reported use of the electricity programs as well as the benchmark provinces for the larger scale

industry users:

NONCONFIDENTIAL DOCUMENT
CONFIDENTIAL INFORMATION REMOVED



See CS Remand Cmts. at 28 (Business Proprietary Document) (REM C.R. 5) (citing id. at Attach I; CS Case Br. at Attach 4 (C.R. 332-35).  As seen above, the benchmark provinces only align with where the mandatory respondents who reported use of the electricity programs are located in [ ▮ ▮ ].  Following Commerce's logic to its conclusion, no respondent will ever escape a subsidy regardless of its geographical location.  Despite the geographical spread among the respondents in this case and all other Chinese CVD cases, Commerce irrationally found that all respondents were subsidized under the same program.

In sum, Commerce's benchmark construction further proves that Commerce failed to designate a subsidized geographical region thereby rending its specificity determination as not in accordance with law.

### D. Commerce Could Have Designated a Geographical Region Based on the Information on the Record

Commerce determined that due to the GOC's failure to cooperate it was "unable to demonstrate that such variances are in accordance with market principles or cost differences." Remand at 20; see also id. at 48 (asserting that "requiring Commerce to identify which provinces might actually be benefitting from such a GOC policy would be unreasonable"). Even taking Commerce's argument that a gap existed in the record justifying its use of AFA as true, which Canadian Solar rejects as the price schedules demonstrated that there was no regional specificity, there were nonetheless options available for Commerce to designate a geographical region based on AFA.

Several recent decisions by the Court are noteworthy here because they rejected Commerce's application of AFA based on Commerce's claim that it lacked necessary information to understand the underlying operation of a program, although related to a different subsidy program. In these cases, the Court held that Commerce erred in determining that certain respondents benefitted from the EBCP based on the GOC's failure to cooperate when contrary record evidence established non-use of the program. See, e.g., Clearon Corp. v. United States, __ CIT __, __, 474 F. Supp. 3d 1339, 1354 (2020); Guizhou Tyre, __ CIT at __, 415 F. Supp. 3d at 1342. In Clearon, the Court remanded Commerce's use of AFA based on the GOC's "fail{ure} to provide requested information about the operation of the {EBCP}" to determine the respondents benefitted from the program as not supported by substantial evidence because Commerce had "pointedly clos{ed} its eyes on the evidence provided by {respondent} that would 'fairly

25

detract{}' from its ultimate conclusion." <u>Clearon</u>, __ CIT at __, 474 F. Supp. 3d at 1350, 1353-54 (quoting <u>Guizhou Tyre</u>, __ CIT at __, 415 F. Supp. 3d at 1342).  Specifically, the Court found that other record evidence, namely customer declarations of non-use, demonstrated that the respondent did not benefit from the EBCP.  <u>See</u> <u>Clearon</u>, __ CIT at __, 474 F. Supp. 3d at 1354.  The Court reasoned that, even when relying on AFA, "{t}he law does not permit Commerce to circumvent the statutory requirements of the {countervailable duty} statute just because a respondent fails to cooperate; nor is Commerce 'relieve{d} { } from relying on *some* facts to make the requisite determinations to satisfy the elements of 19 U.S.C. § 1677(5).'"  <u>Clearon</u>, __ CIT at __, 474 F. Supp. 3d at 132 (quoting <u>Guizhou Tyre</u>, __ CIT at __, 415 F. Supp. 3d at 1342 (quoting <u>Changzhou Trina</u>, __ CIT at __, 359 F. Supp. 3d at 1340)).  In several related cases examining the same issue, Commerce reversed course on remand and the Court ultimately sustained Commerce's redetermination of non-use of the EBCP.  <u>See, e.g.</u>, <u>Canadian Solar II</u>, 2020 Ct. Intl. Trade LEXIS 157, at *8; <u>Clearon Corp. v. United States</u>, No. 17-00171, 2021 Ct. Intl. Trade LEXIS 56, at *5 (Ct. Int'l Trade May 6, 2020); <u>Guizhou Tyre</u>, __ CIT at __, 415 F. Supp. 3d at 1405.

Commerce concluded that Canadian Solar's "reliance on the {EBCP} cases is misplaced because Commerce's verification of the EBCP concerns a wholly different issue, *i.e.*, whether the respondents used the EBCP."  Remand at 51.  The facts in the EBCP cases, however, are directly analogous to Commerce's specificity determination concerning the electricity program.  In the EBCP cases, the Court determined that Commerce's use of AFA to find that respondents benefited from the EBCP was not supported by substantial evidence where other record evidence demonstrated respondents' non-use of the program.  <u>See, e.g.</u>, <u>Clearon</u>, __ CIT at __, 474 F. Supp. 3d at 1350.  The Court faulted Commerce for focusing on the operation of the EBCP where such information was not necessary for making a usage finding.  <u>See id.</u> (noting that the Court "has

26

rejected Commerce's position that information about the operation of the {EBCP} is necessary for it to verify a respondent's claimed non-use of the program"). Commerce concluded that, unlike in the EBCP cases, here it "articulated its need to understand how electricity prices are set in China to determine whether they are based on market principles and whether the variation in the prices between regions is because of market factors." Remand at 51. Specifically, Commerce asserted that it could not make an underlying specificity determination based upon the GOC's failure to provide certain information related to the operation of the electricity program – such as a "detailed description of the cost elements and price adjustments" that go into setting electricity prices. Id. at 21. Such underlying information related to the "operation" of the electricity program, much like the operational information relevant to the EBCP, was not necessary for Commerce to make its broader specificity determination where the price schedules submitted by the GOC demonstrate that no geographical region received subsidized electricity prices and record evidence establishes that Canadian Solar paid the published prices.

Not only is such information concerning the operation of the electricity program not necessary for Commerce to make its specificity determination, it also does not prevent Commerce from designating a geographical region that received subsidized electricity prices based on an adverse inference. For example, in drawing adverse inferences from the facts on the record, Commerce could have could have identified [ ███████ ] as the designated geographical region receiving the subsidy because it has the lowest rates for normal use in the Large Industrial User category, which accounts for the majority of use by respondents. See CS Remand Cmts. at Attach. I (REM C.R. 6-7). This adverse inference is just one example available to Commerce that would have filled the gap identified in the record resulting from the alleged failure of the GOC to cooperate by inferring that the provinces with the lowest rates were subsidized.

27

Commerce sets forth that it is not finding that "'low' electricity prices are in and of themselves, a subsidy."  Remand at 48.  Notably, however, this statement is contrasted by Commerce itself.  Commerce notes that "Canadian Solar equates lower rates with subsidized rates," but in the next sentence in its remand redetermination reiterates the factual predicate that it relied upon in making an adverse inference – namely, that "electricity prices are <u>lower</u> in certain regions as compared to others."  <u>Id.</u> at 52 (emphasis added).  Commerce cannot have it both ways; it cannot in one instance claim that the lower prices are not necessarily indicative of a subsidy and then later rely on this fact in its conclusion that it need not examine the significant variability in electricity prices throughout China.  Although Commerce may not know with full certainty, Commerce's inference needs only be reasonable and supported by the record.  Here, it is reasonable to assume that the lowest priced regions are the ones receiving any alleged subsidy. This inference is far more reasonable than the one relied on by Commerce in its remand redetermination.  Further, this inference, as just one example, can be made without understanding the operation of the electricity program, including the market considerations that play into the GOC's alleged role in setting prices among the provinces.  This inference would also still be "adverse" because Commerce would be deciding contrary to the GOC's statement that the central government does not set electricity prices and that "a competitive system has been established to create prices that are tied to market fluctuations in the coal market and other market influences." <u>See</u> GOC QR at 68 (Public Version) (P.R. 73-76).   For these reasons, Commerce's plea that adopting Canadian Solar's plain language interpretation of 19 U.S.C. § 1677(5A)(D)(iv) would create "a standard that would prohibit Commerce from applying AFA without a detailed factual predicate for all aspects of the subsidy finding" rings hollow.  Remand at 49.

In short, Commerce wrongly equates operational information as necessary to make its specificity determination. Again, the record establishes that the electricity program was not regionally specific. But, taking Commerce's argument that a gap existed in the record justifying its use of AFA as true, Commerce could have designated a subsidized geographical region based on AFA. What Commerce cannot do is to conclude that nowhere and everywhere is subsidized in China.

### E. Commerce's Benchmark Construction Is Arbitrary and Capricious by Nonsensically Treating a Single Factory as Located in Multiple Locations

In addition to supporting Canadian Solar's argument that Commerce failed to designate a geographical region that received subsidized electricity prices, Commerce's benchmark calculation itself is not in accordance with law because Commerce arbitrarily used benchmarks from multiple provinces to measure the subsidy benefit received by a factory in one location. See Canadian Solar, 918 F.3d at 917 (Fed. Cir. 2019) (noting that the arbitrary and capricious standard requires that "Commerce's determination is the product of reasoned decisionmaking"); see also In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (in determining whether an agency action is arbitrary, the "court analyzes only whether a rational connection exists between the agency's factfindings {sic} and its ultimate action"). As set forth above, Commerce created a mix-and-match of rates from [ ▉ ] different provinces in China for large scale industry users, depending on which one had the highest rate for the specific electricity user/rate category required to be measured. See CS Remand Cmts. at Attach. I (REM C.R. 5). Commerce selected category-specific benchmarks even though the electricity program under review is a single program. Commerce never found, nor did petitioner allege, that the GOC confers a separate subsidy for each user category and yet Commerce nonsensically presumed as much in the way it selected benchmarks. Commerce provided no legal basis for using multiple benchmarks to measure a

single program.  Instead, Commerce should have designated a single geographical region as the subsidized region and designated a single region as the unsubsidized, or benchmark, region.

There is no rational connection between the agency's fact-finding and its benchmark calculation, even under AFA, because it imputes electricity rates from [ ██ ] different provinces in China to the same (stationary) Canadian Solar facility.  To state the obvious – Canadian Solar's factories cannot be in multiple different provinces in China at the same time, even under AFA. The law does not permit Commerce to apply strictly punitive measures and there is no way to view the application of penalty benchmarks to a respondent as if it were located simultaneously in [ ██ ] different places in China as anything but punitive.  See F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (holding that the purpose of AFA "is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins").

Similar to the argument above, Canadian Solar acknowledges that this Court has previously rejected this argument.  See Trina I, __ CIT at __, 352 F. Supp. 3d at 1342-43. ("If, on remand, Commerce properly concludes that the provision of electricity in the PRC amounts to a countervailable subsidy, Commerce's benchmark determination based on record evidence with appropriate adverse inferences is consistent with its regulations for calculating benchmarks."). Canadian Solar, however, respectfully continues to maintain that Commerce's benchmark calculation was arbitrary by applying electricity prices throughout China to a factory located in a single province.  Indeed, at oral argument concerning Canadian Solar's appeal of Commerce's specificity determination regarding the electricity program in the fourth administrative review, the panel at the Federal Circuit expressed concerns over Commerce's benchmark calculation querying the United States regarding whether the statute requires that Commerce use data from the "same

region" when calculating its benchmark price.  See Oral Argument at 25:35-26:22, Canadian Solar Inc. v. United States (CAFC No. 21-1434), https://cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/.

For these reasons, Commerce's decision to sample the highest provincial electricity rates in its calculation of the electricity benchmark in its remand redetermination was not in accordance with law because Commerce arbitrarily applied punitive measures to the mandatory respondents in a way that cannot rationally connect to their production of solar cells.

### F.  Conclusion

Commerce's determination that the electricity program was regionally specific is not in accordance with law because Commerce failed to designate a geographical region that received subsidized electricity prices.  Commerce's reliance on AFA to determine that the electricity program was regionally specific was also not supported by substantial evidence in the first instance because the record demonstrates that no region received subsidized electricity prices.  Further, even if Commerce's regional specificity determination was lawful, Commerce's associated benchmark calculation was nonetheless not in accordance law because it arbitrarily sampled the highest provincial electricity rates without any rational connection to the locations where the mandatory respondents produced solar cells.

## CONCLUSION

For the reasons set forth herein, this Court must reject the remand redetermination that the electricity program was regionally specific and remand to Commerce with the specific instructions to remove the subsidy rate associated assigned to Canadian Solar under the electricity program.

Respectfully submitted,

Dated: January 12, 2022

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Sarah M. Wyss
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Canadian Solar*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that these objections to the remand redetermination comply with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures.  Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 9,497 words.


Dated: January 12, 2022

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Canadian Solar*