**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE

———————————————————————

| | |
|---|---|
| CANADIAN SOLAR INC. *ET AL.*, ) | |
| ) | |
| Plaintiffs, and ) | |
| ) | |
| CHANGZHOU TRINA SOLAR ENERGY CO. ) | |
| LTD. *ET AL.*, ) | |
| ) | |
| Consolidated Plaintiffs, and ) | |
| ) | |
| JINKO SOLAR CO., LTD. *ET AL.*, ) | Consol. Court No. 19-00178 |
| ) | |
| Plaintiff-Intervenors, and ) | |
| ) | |
| YINGLI GREEN ENERGY HOLDING CO., LTD. ) | |
| *ET AL.*, ) | |
| ) | |
| Plaintiff-Intervenors, and ) | |
| ) | |
| SHANGHAI BYD CO., LTD., ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| SUNPOWER MANUFACTURING OREGON, ) | |
| LLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |

———————————————————————

**<u>DEFENDANT'S REPLY TO COMMENTS ON REMAND REDETERMINATION</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:                          JUSTIN R. MILLER
PAUL KEITH                           Attorney-In-Charge
Senior Attorney                      U.S. Dept. of Justice, Civil Division
Office of the Chief Counsel          International Trade Field Office
    for Trade Enforcement and Compliance    26 Federal Plaza, Rm. 346
U.S. Department of Commerce          New York, NY 10278
                                     Tel. (212) 264-9241
                                     Fax (212) 264-1916
March 11, 2022                       Attorneys for Defendant

# TABLE OF CONTENTS

BACKGROUND ......................................................................................................... 2

I.      The Court's Remand Order ............................................................................ 3

II.     Commerce's Remand Redetermination ......................................................... 4

ARGUMENT ............................................................................................................ 6

I.      Standard of Review ....................................................................................... 6

II.     The Court Should Sustain the Remand Redetermination With Respect To
        The Export Buyer's Credit Program .............................................................. 7

III.    Commerce's Calculation Of The Aluminum Extrusion Benchmark Using Data
        From IHS Complies With The Court's Remand Order .................................... 8

IV.     Commerce's Reliance On A Tier Two Benchmark For The Polysilicon Benchmark
        Complies With The Remand Order And Is Supported By Substantial Evidence ............. 9

V.      Commerce's Specificity Finding For The Provision Of Electricity Complies With
        The Court's Remand Order, Is In Accordance With Law, And Is Supported By
        Substantial Evidence .................................................................................... 12

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

<u>Cases</u>

*Canadian Solar Inc. v. United States,*
    Slip Op. 20-23, 2020 WL 898557 (Ct. Int'l Trade Feb. 25, 2020) ............................................ 3

*Canadian Solar Inc. v. United States,*
    Slip Op. 21-114, 2021 (Ct. Int'l Trade Sept. 3, 2021) ....................................................... *passim*

*Canadian Solar Inc. v. United States,*
    Slip Op. 20-149 at 10, 2020 WL 6129754 (Ct. Int'l Trade Oct. 19, 2020) ...................... *passim*

*Canadian Solar, Inc. v. United States*,
    23 F.4th 1372 (Fed. Cir. 2022) ........................................................................................ *passim*

*Changzhou Trina Solar Energy Co. v. United States,*
    975 F.3d 1318 (Fed. Cir. 2020) .................................................................................................. 15

*Changzhou Trina Solar Energy Co., Ltd. v. United States,*
    352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ............................................................................. 3

*Changzhou Trina Solar Energy Co., Ltd. v. United States*,
    Slip Op. 18-166, 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ........................................... 3, 21

*Changzhou Trina Solar Energy Co., Ltd. v. United States,*
    Slip Op. 19-137, 2019 WL 5856438 (Ct. Int'l Trade Nov. 8, 2019) ...................... 3, 8, 9, 12, 13

*Changzhou Trina Solar Energy Co., Ltd. v. United States,*
    Slip Op. 20-108, 466 F. Supp. 3d 1287 (Ct. Int'l Trade Aug. 4, 2020) ........................... *passim*

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) .................................................................................................................... 7

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) .................................................................................................................... 8

*Essar Steel, Ltd. v United States,*
    678 F.3d 1268 (Fed. Cir. 2012) ................................................................................................ 22

*Fine Furniture (Shanghai) Ltd. v. United States,*
    748 F.3d 1365 (Fed. Cir. 2014) .......................................................................................... 19, 22

*Fine Furniture (Shanghai) Ltd. v United States,*
    865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) ........................................................................... 22

*Gallant Ocean (Thai.) Co. v. United States,*
  602 F.3d 1319 (Fed. Cir. 2010) ............................................................... 15

*I.N.S. v. Elias-Zacarias,*
  502 U.S. 478 (1992) ................................................................................. 7

*MacLean-Fogg Co. v. United States,*
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ...................................... 6, 7

*Nucor Corp. v. United States,*
  612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ......................................... 7

*Royal Thai Gov't v. United States,*
  441 F. Supp. 2d 1350 (Ct. Int'l Trade 2006) ....................................... 19

*Samsung Electronics Co. v. United States,*
  973 F. Supp. 2d 1321 (Ct. Int'l Trade 2014) ....................................... 19

*SmithKline Beecham Corp. v. Apotex Corp.,*
  439 F.3d 1312 (Fed. Cir. 2006) ............................................................. 12

*United States v. Great American Ins. Co.,*
  738 F.3d 1320 (Fed. Cir. 2013) ............................................................. 11

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................................... 7

19 U.S.C. § 1677(5A)(D)(iv) ........................................................... 6, 13, 18

19 U.S.C. § 1677e(a) .................................................................................. 15

19 U.S.C. § 1677e(b) ............................................................................ 15, 21

19 U.S.C. § 1677e(b)(2) .............................................................................. 15

**Regulations**

19 C.F.R. § 351.308(c) ............................................................................... 15

19 C.F.R. § 351.511(a)(2)(iii) ..................................................................... 21

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*,
  H.R. Rep. 103-316, Vol. 1, 103d Cong. at 870 (1994) ........................................................ 22

## **Other Authorities**

*Countervailing Duties*,
  63 Fed. Reg. 65,348 (Dep't of Commerce Nov. 25, 1988) ............................................. 6, 10, 11

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
  From the People's Republic of China*,
  84 Fed. Reg. 5,051 (Dep't of Commerce Feb. 20, 2019) .................................................... 9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the
  People's Republic of China: Final Results of Countervailing Duty Administrative Review
  and Rescission of Review, In Part; 2016*,
  84 Fed. Reg. 45,125 (Dep't of Commerce Aug. 28, 2019) ................................................... 2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
  from the People's Republic of China: Amended Final Results of Countervailing Duty
  Administrative Review,*
  84 Fed. Reg. 68,102 (Dep't of Commerce Dec. 13, 2019) .................................................... 2

## **DEFENDANT'S REPLY TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this reply to comments filed by plaintiffs Canadian Solar Inc., Canadian Solar International, Ltd., Canadian Solar Manufacturing (Luoyang) Inc., Canadian Solar Manufacturing (Changshu) Inc., CSI Cells Co., Ltd., CSI Solar Power (China) Inc., CSI Solar Power Group Co., Ltd., CSI Solartronics (Changshu) Co., Ltd., CSI Solar Technologies Inc., CSI New Energy Holding Co., Ltd., CSI-GCL Solar Manufacturing (Yancheng) Co., Ltd., Changshu Tegu New Materials Technology Co., Ltd., Changshu Tlian Co., Ltd., Suzhou Sanysolar Materials Technology Co., Ltd., and Canadian Solar (USA) Inc. (collectively, Canadian Solar), plaintiff-intervenors Jinko Solar Co., Ltd., Jinko Solar Import & Export Co., Ltd., and Zhejiang Jinko Solar Co., Ltd. (collectively Jinko Solar), and plaintiff-intervenor Shanghai BYD Co., Ltd., regarding the Department of Commerce's remand redetermination. *See Final Results of Redetermination Pursuant to Court Remand*, December 13, 2021, ECF No. 130 (Remand Results); Canadian Solar's comments on the remand redetermination, January 12, 2022, ECF No. 132 (Canadian Solar Cmts.); Jinko's comments on the remand redetermination, January 12, 2022, ECF No. 131 (Jinko Cmts.), which agreed with certain aspects of the remand results and otherwise adopted the arguments of Canadian Solar; and Shanghai BYD's comments on the remand redetermination, January 12, 2022, ECF No. 134, which agreed with certain aspects of the remand results and otherwise adopted the arguments of Canadian Solar.

Plaintiffs Changzhou Trina Solar Energy Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Changzhou Trina Solar Yabang Energy Co., Ltd., Yancheng Trina Solar Energy Technology Co., Ltd., Turpan Trina Solar Energy Co., Ltd., Hubei Trina Solar Energy

Co., Ltd., and Changzhou Trina PV Ribbon Materials Co., Ltd. (collectively, Trina), did not file comments.

Because the remand redetermination complies with the Court's order, *see* Slip Op. 21-114, September 3, 2021, ECF No. 124 (*Remand Order*), and is supported by substantial evidence and otherwise in accordance with law, we respectfully request that the Court sustain the remand results and enter judgment in favor of the United States.

## BACKGROUND

In this consolidated action, plaintiffs, consolidated plaintiffs, and plaintiff-intervenors challenge certain aspects of Commerce's final determination in the fifth administrative review of the countervailing duty order covering crystalline silicon photovoltaic cells from the People's Republic of China, covering the period from January 1, 2016, through December 31, 2016.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Countervailing Duty Administrative Review and Rescission of Review, In Part; 2016*, 84 Fed. Reg. 45,125 (Dep't Commerce Aug. 28, 2019) (final results) (P.R. 250), and accompanying Issues and Decision Memorandum (IDM) (P.R. 249), as amended by *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Amended Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 68,102 (Dep't of Commerce Dec. 13, 2019) (amended final results) (P.R. 271).

In the final results, Commerce applied an adverse inference in selecting from among the facts otherwise available and found that the respondents benefited from the Export Buyer's Credit Program given the Chinese government's failure to cooperate.  IDM at 22-40.  Commerce also countervailed the provision of aluminum extrusions for less than adequate remuneration

(LTAR), finding that the program is a *de facto* specific subsidy because the recipients are limited in number. *Id.* at 45-47. In calculating the benchmark for aluminum extrusions for LTAR, Commerce averaged two datasets: (1) an annual value from IHS Markit data (IHS) and (2) monthly data from the United Nations Comtrade Database (Comtrade). *Id.* at 46-47. Additionally, Commerce countervailed the provision of polysilicon for LTAR. *Id.* at 54-55. In measuring the benefit from the government of China's (GOC) provision of polysilicon for LTAR, Commerce relied on third party "external" benchmark sources, rather than an "internal," tier one benchmark source because it had determined that the polysilicon market in China is distorted, and therefore an "internal," tier one, benchmark would be unreliable. *Id.* Additionally, because the GOC failed to provide the information on the derivation of electricity prices, Commerce applied an adverse inference in selecting from among the facts otherwise available to determine the provision of electricity was a countervailable subsidy. IDM at 50-53.

## I.   **The Court's Remand Order**

In response to parties' motions for judgment on the administrative record, the United States requested voluntary remand of three issues that were substantially similar to issues remanded by this Court in the prior administrative reviews of the same countervailing duty order. *See* Def.'s Resp. in Opp'n. To Pls.' Mots. for J. Upon the Agency R., ECF No. 79, at 19-26 (Dec. 4, 2020); *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) (Slip Op. 18-166) (*1st Remand Order of the 3rd Admin. Review*); *Changzhou Trina Solar Energy Co., Ltd. v. United States*, Slip Op. 19-137, 2019 WL 5856438 (Ct. Int'l Trade Nov. 8, 2019) (*2nd Remand Order of the 3rd Admin. Review*); *Canadian Solar Inc. v. United States*, Slip Op. 20-23, 2020 WL 898557 (Ct. Int'l Trade Feb. 25, 2020) (*1st Remand Order of the 4th Admin. Review*).

3

Specifically, the United States requested remand for Commerce to reconsider: (1) the averaging of the Comtrade data and the IHS data to determine the benchmark for aluminum extrusions, (2) Commerce's reliance on third party "external" benchmark sources for the polysilicon benchmark, and (3) the determination that China's provision of electricity is a specific subsidy.  *See* Def.'s Resp. in Opp'n. To Pls.' Mots. for J. Upon the Agency R., ECF No. 79, at 19-26 (Dec. 4, 2020).

On September 3, 2021, the Court granted our request for voluntary remand and instructed Commerce to consult the Court's prior opinions concerning the third and fourth administrative reviews when reevaluating those issues.  *Remand Order* at 6.  In addition to granting our request, the Court also remanded Commerce's finding, based on an application of an adverse inference in selecting from among the facts otherwise available, that the respondents used the Export Buyer's credit program, and Commerce's determination not to grant Canadian Solar's request for an entered value adjustment.  *Id.* at 19-33.

## II.   <u>Commerce's Remand Redetermination</u>

On December 13, 2021, Commerce issued its remand redetermination.  Commerce: (1) found that Canadian Solar and Jinko Solar did not use the Export Buyer's Credit Program; (2) granted Canadian Solar's requested entered value adjustment; (3) revised the benchmark for the provision of aluminum extrusions for LTAR by relying solely on IHS data specific to solar frames; (4) offered additional explanation for its finding that the polysilicon market in China is distorted by the Chinese government's participation, and thus continued to find it necessary to rely on an external benchmark; and (5) explained that, based on adverse facts available, the provision of electricity for LTAR is regionally specific.  *See generally* Remand Results at 5-27.

For the Export Buyer's Credit Program, Commerce explained that it needed more information from the Chinese government to understand the operation of the program and that "attempting to verify non-use of the {program} without knowing where to look, or what to look for, would be unlikely to yield accurate or meaningful results." *Id* at 5-6. However, because the Court found Commerce's explanation unavailing in its consideration of the third and fourth administrative reviews and specifically instructed Commerce to consult the decisions rendered in the prior reviews for this remand redetermination, Commerce found the program not used. *Id*. at 6.

Regarding the benchmark for aluminum extrusions, Commerce reconsidered its use of Comtrade and IHS datasets in calculating the benchmark. Commerce concluded that it could not demonstrate that monthly price fluctuations reflected by the Comtrade data are driven by variations in solar frame prices or "adequately address factors affecting comparability" for the Comtrade data. *Id.* at 7. Therefore, Commerce relied solely on IHS data to determine the benchmark for aluminum extrusions. *Id.*

With respect to the computation of the polysilicon benchmark, Commerce explained its use of facts otherwise available because of the Chinese government's inability to provide information specific to solar-grade polysilicon. *Id.* at 9. Commerce identified the facts in support of its determination that China's solar-grade polysilicon market was distorted. *Id.* at 10-11. Commerce then explained that it rejects tier one benchmarks, including imports, upon a finding of distortion because all such tier one transactions are competing in the domestic market setting. *Id* at 19. Additionally, Commerce clarified that tier two benchmarks are permissible "'{w}here it is reasonable to conclude that actual transaction prices are significantly distorted as a result of the government's *involvement* in the market.'" *Id.* at 13 (italics in remand results)

(quoting *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,377 (Dep't Commerce Nov. 25, 1988) (*Preamble*)).  Commerce then examined all evidence on the record and concluded that the evidence demonstrates the Chinese government's "distortive participation" in the solar-grade polysilicon market.  *Id.* at 11-18.

Commerce revised its determination concerning the specificity of the provision of electricity, and found the provision of electricity to be regionally specific pursuant to 19 U.S.C. § 1677(5A)(D)(iv).  *Id.* at 19.  Commerce identified the specific information that was missing from the record as the result of government of China's lack of cooperation and explained why the information was necessary to verify the Chinese government's claims that electricity prices in China are based on market principles and that relevant pricing authorities consider supply, demand, and costs of electricity transmissions and generation.  *Id.* at 19-25.  Commerce also found that the record contradicted the GOC's claim that, since April 2015, price setting authority was delegated to the provinces.  *Id.* at 21-24.  Commerce then concluded, based on adverse facts available, that "the provision of electricity is a countervailable subsidy program whereby the central Chinese government, through the {National Development and Reform Commission (NDRC)} in Beijing, sets different prices in different regions under its authority (*i.e.*, the provinces) without any commercial or market considerations, but instead for development purposes."  *Id.* at 24-25.  As a result, Commerce found the provision of electricity to be regionally specific.  *Id.*

## ARGUMENT

### I.   Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are

otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d

1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence"

means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Accordingly, "the

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed.*

*Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Rather, when Congress has

entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as

here, the agency's conclusions may be set aside only if the record contains evidence "so

compelling that no reasonable factfinder" could reach the same conclusion.  *See I.N.S. v. Elias-*

*Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d

1264, 1287 (Ct. Int'l Trade 2009).

## II.     The Court Should Sustain the Remand Redetermination With Respect To The Export Buyer's Credit Program

Regarding the Export Buyer's Credit Program, the Court stated that Commerce may

attempt to verify the respondents' claims of non-use or, alternatively, elect not to extend

verification and simply accept the respondents' evidence of non-use.  *Remand Order* at 33.

Commerce explained that it continued to find that, without the Chinese government's

cooperation, verification would be unlikely to yield accurate or meaningful results.  Therefore,

Commerce chose to accept the respondents' claims of non-use, under respectful protest.  Remand

Results at 6.  No party challenges Commerce's determination to find the Export Buyer's Credit

Program not used by the respondents.  *See* Canadian Solar Cmts. at 2 n.1; Jinko Solar Cmts. at 2-

3; Shanghai BYD Cmts. at 2-3.  Because Commerce's finding specifically follows one of the

options provided by the Court, Commerce's determination complies with the *Remand Order* and should be sustained.

III.   **Commerce's Calculation Of The Aluminum Extrusion Benchmark Using Data From IHS Complies With The Court's Remand Order**

In granting Commerce's request for a remand regarding the aluminum extrusions benchmark, the Court directed Commerce to consult its prior opinions on the matter concerning the third and fourth administrative reviews. *Remand Order* at 6. In the *2nd Remand Order of the 3rd Admin. Review*, the Court directed Commerce to use the IHS data alone in computing the aluminum extrusions benchmark, "{u}nless Commerce can demonstrate . . . that the HTS subheadings used by Comtrade are not grossly overinclusive and determines that the merchandise is sufficiently comparable to solar frames." *2nd Remand Order of the 3rd Admin. Review*, Slip Op. 19-137 at 15. Commerce complied with the Court's direction on remand in the third and fourth administrative reviews by using the IHS data alone in computing the aluminum extrusions benchmark, and the Court sustained these determinations. *See Changzhou Trina Solar Energy Co., Ltd. v. United States*, Slip Op. 20-108 at 10, 466 F. Supp. 3d 1287 (Ct. Int'l Trade Aug. 4, 2020) (*3rd Opinion on 3rd Admin. Review*); *Canadian Solar Inc. v. United States*, Slip Op. 20-149 at 10, 2020 WL 6129754 (Ct. Int'l Trade Oct. 19, 2020) (*2nd Opinion on 4th Admin. Review*). Here, as in the prior reviews, Commerce determined that it "is likewise not possible to adequately address factors affecting comparability" for the Comtrade data. Remand Results at 7. Accordingly, consistent with the *Remand Order*, Commerce relied solely on the IHS data as a benchmark for aluminum extrusions. *Id.*

No parties contest Commerce's finding. *See* Canadian Solar Cmts. (not commenting on the issue); Jinko Solar Cmts. at 3 (supporting Commerce's determination); Shanghai BYD Cmts.

at 3 (supporting Commerce's determination).   Accordingly, the Court should sustain

Commerce's calculation for the aluminum extrusions benchmark in the remand results.

## IV.   Commerce's Reliance On A Tier Two Benchmark For The Polysilicon Benchmark Complies With The Remand Order And Is Supported By Substantial Evidence

In granting Commerce's remand request for the polysilicon benchmark issue, the Court

instructed Commerce to consult its prior opinions concerning the issue from the proceedings

involving the third and fourth administrative reviews.  *Remand Order* at 6.  In the prior reviews,

the Court found that Commerce did not sufficiently explain how the GOC's minimal

participation in the general polysilicon market led to distorted import prices of solar-grade

polysilicon.  *See 2nd Remand Order for the 3rd Admin. Review*, Slip Op. 19-137 at 20.

Commerce's remand redetermination complies with the Court's order.  In particular,

Commerce's determination on remand is consistent with its determinations on remand in the

third and fourth administrative reviews, which this Court sustained.  *See 3rd Opinion on 3rd

Admin. Review*, Slip Op. 20-108 at 14-18; *2nd Opinion on 4th Admin. Review,* Slip Op. 20-149 at

13-15.

Specifically, as in the earlier reviews, Commerce first identified the facts it had initially

relied on in the preliminary results to determine that the Chinese market for solar-grade

polysilicon was distorted and explained the relevance of those facts.  Remand Results at 10-11

(citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the

People's Republic of China*, 84 Fed. Reg. 5,051 (Dep't of Commerce Feb. 20, 2019) (prelim.

results of countervailing duty admin. rev.), and accompanying preliminary decision

memorandum (PDM) at 27 (P.R. 160)[1]).  Commerce continued to explain its practice of rejecting

tier one benchmarks, including import data, upon a finding market distortion.  *Id.* at 11, 18-19.

Commerce also acknowledged that the *Preamble* explicitly identifies government ownership as

an indicator that renders tier one benchmarks unreliable, and clarified that there are other

instances where use of tier two benchmark is permissible.  *Id.* at 13.  Specifically, Commerce

may reject tier one benchmarks "'{w}here it is reasonable to conclude that actual transaction

prices are significantly distorted as a result of the government's *involvement* in the market.'"  *Id.*

(italics in remand results) (quoting *Preamble*, 63 Fed. Reg. at 65,377).  Consequently,

Commerce expanded its analysis to account for distortion resulting from the GOC's

involvement.  *Id*.

      Commerce's distortion finding is supported by substantial evidence.  Commerce

identified the specific record facts that it considered in rendering its finding of distortion, as it

did in the prior reviews.  Remand Results at 14-18.[2]  Because the GOC was unable to provide the

necessary information on its participation in the solar-grade polysilicon industry, Commerce

---

[1] The PDM cited *China - Measures Related to the Exportation of Various Raw Materials*, Report
of the Panel, WT/DS394/R (July 5, 2011) (P.R. 215); "Chinese Solar Firm Revises Price Mark,"
Keith Bradsher, *New York Times*, (August 27, 2009) (P.R. 215); the Polysilicon Productions Data
(P.R. 215) identified as "Fits and Starts in China's Polysilicon Industry," *The China Sourcing
Blog* (May 20, 2011); and the GOC's June 19, 2018 Questionnaire Response at 115-118 (P.R.
74).

[2] Commerce cited the "Additional Documents Memorandum," dated February 12, 2019 (P.R.
215) (citing a WTO Panel Report and a *New York Times* article); Commerce's Polysilicon NFI
(R.P.R. 2) at Attachment I pages 7-8, 10-13, Attachment II pages 17, 20-21, Attachment III
pages 26 and 28, Attachment IV pages 17 and 36, Attachment V pages 11, 14, 16, 21, and 88,
Attachment VI pages 54, and 59-60; and Canadian Solar's Polysilicon NFI Comments (R.P.R. 3)
at Exhibit 1 (citing a Chinese Polysilicon Market Study at 117) and Exhibit 2 page 17.
      Footnotes 54 and 55 of the remand results reference "Attachment VII" to Commerce's
Polysilicon NFI (R.P.R. 2).  This is a typographical error.  The footnotes should reference
"Attachment VI" to Commerce's Polysilicon NFI (R.P.R. 2).

relied on this record information as the facts otherwise available, without adverse inferences. *Id.* at 9.  Accordingly, Commerce found the GOC's own policy statements, together with the record evidence illustrating the GOC's support of the domestic solar-grade polysilicon market, demonstrate the GOC's distortive participation in the market. *Id.* at 18 (*see also* the record evidence cited in footnote 2 of this reply brief).  Accordingly, pursuant to the *Preamble* and Commerce's practice of rejecting tier one benchmarks when the domestic market is distorted, Commerce found Canadian Solar's import data to be an unreliable tier one benchmark. *Id.* at 19. This Court sustained similar analysis in the remand redeterminations for the third and fourth administrative reviews. *See 3rd Opinion on 3rd Admin. Review,* Slip Op. 20-108 at 14-18 ("As a whole, there is sufficient record evidence to support Commerce's finding of market distortion and rejection of Canadian Solar's import data in light of that distortion."); *2nd Opinion on 4th Admin. Review*, Slip Op. 20-149 at 13-15.  Thus, Commerce's determination is supported by substantial evidence and complies with the remand order.

Moreover, the parties did not advance arguments to the contrary.  Jinko Solar and Shanghai BYD each state that they oppose Commerce's determination and incorporate by reference Canadian Solar's comments on the issue.  Jinko Solar Cmts. at 3; Shanghai BYD Cmts. at 4.  Canadian Solar, however, did not comment on the polysilicon benchmark issue. *See* Canadian Solar Cmts. (addressing only the electricity for LTAR program).  Therefore, although Jinko Solar and Shanghai BYD assert that Commerce's determination is not supported by substantial evidence, they fail to provide arguments to support their assertions and any substantive response is now waived. *See, e.g.*, *United States v. Great American Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) (stating that "[i]t is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived" (citations omitted.));

11

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-20 (Fed. Cir. 2006) (explaining, inter alia, that "[the] law is well established that arguments not raised in the opening brief are waived" (citation omitted.))  Accordingly, the Court should sustain Commerce's determination because it is reasonable for Commerce to conclude, based on the record, that the solar-grade polysilicon market is distorted and that tier one prices are therefore unusable as a benchmark.

**V.     Commerce's Specificity Finding For The Provision Of Electricity Complies With The Court's Remand Order, Is In Accordance With Law, And Is Supported By Substantial Evidence**

The Court granted Commerce's request for a voluntary remand of its determination that the GOC's provision of electricity is a specific subsidy because the Court found the administrative records of the third and fourth administrative reviews and Commerce's legal rationales to be similar.  *Remand Order* at 6.  Accordingly, the Court remanded Commerce's determination with instructions for Commerce to consult the Court's prior opinions involving the third and fourth administrative reviews.  *Id.*

In the *2nd Remand Order of the 3rd Admin. Review*, the Court found that Commerce had identified potentially-material gaps in the record that could allow Commerce to apply an adverse inference to the facts otherwise available.  Slip Op. 19-137 at 22.  However, the Court determined that it could not evaluate Commerce's determination that the provision of electricity is limited to certain industries because certain exhibits were not on the record.  *Id.* at 23-24.  Moreover, the Court found that Commerce did not sufficiently explain how its finding that the GOC is subsidizing specific industries relates to the gap created by the GOC's non-cooperation such that Commerce may draw an adverse inference to determine that specific industries are

subsidized.  *Id.* at 24.  Thus, the Court ordered Commerce to "expressly set forth its reasoning under the statutory steps for drawing adverse inferences to fill record gaps."  *Id.*

Following the Court's *2nd Remand Order of the 3rd Admin. Review*, Commerce revised its determination in the third administrative review and found the provision of electricity regionally specific under 19 U.S.C. § 1677(5A)(D)(iv), which this Court sustained.  *See 3rd Opinion on 3rd Admin. Review*, Slip Op. 20-108 at 25.  Specifically, the Court found that Commerce's determination was reasonable because "Commerce identified the gap in the record, noted the factual bases it relied upon, and explained the adverse inference it drew based on those facts."  *Id.*  In light of the Court's *2nd Remand Order of the 3rd Admin. Review*, Commerce provided a revised determination on remand in the fourth administrative review proceeding also finding the program regionally specific, which the Court sustained.  *See 2nd Opinion on 4th Admin. Review*, Slip Op. 20-149 at 10-13.  Notably, Canadian Solar appealed the Court's decision on this issue for the fourth review to the Court of Appeals for the Federal Circuit, and the Federal Circuit affirmed this Court's judgment.  *Canadian Solar, Inc. v. United States*, 23 F.4th 1372 (Fed. Cir. 2022).

Here, Commerce has complied with the remand order by providing analysis consistent with the third and fourth administrative reviews—*i.e.*, explaining Commerce's application of an adverse inference in selecting from among the facts otherwise available and its regional specificity determination.  The question before Commerce, as it relates to the specificity determination, is determining the basis for the disparities in provincial electricity prices. Remand Results at 20.  As explained by Commerce, if the "provincial governments are solely responsible for setting prices, it is possible that there is no basis for finding the program regionally specific under section 771(5A)(D)(iv) of the Act because all recipients within the

jurisdiction of the price setting authority would be paying the same prices; thus, there would be no price discrimination on the part of the authority granting the subsidy." *Id*. "However, insofar as the varying prices are set by authorities of the central government in Beijing, and insofar as the GOC is unable to demonstrate that such variances are in accordance with market principles or cost differences, there is, in fact, a regionally specific subsidy program, because the central Beijing authority is setting different prices in different provinces without explanation." *Id*.

In this proceeding, as shown in the remand results, there are gaps in the administrative record, caused by the non-cooperation of the government of China, that prevent Commerce from rendering a determination as to why the electricity prices vary from province to province. *Id.* at 20-21 (citing GOC's June 19, 2018 Questionnaire Response at 68-70, 72-76 (P.R. 74)). For example, the GOC has claimed the electricity prices are set in accordance to market principles, but it did not provide Commerce with "key information" to verify its claim, such as provincial price proposals, a detailed description of the cost elements and price adjustments discussed between the provinces and NDRC, and province-specific explanations of electricity pricing. *Id.* at 20-21 (citing GOC's June 19, 2018 Questionnaire Response at 68-70, 72-76 (P.R. 74)).

As it did in the fourth administrative review, the GOC claims that, in April 2015, the NDRC's price setting authority was delegated to the provinces and therefore Commerce's requests for information were not applicable. *Id*. at 21 (citing GOC's June 19, 2018 Questionnaire Response at 70-71 (response to Question C) (P.R. 74)). Commerce, however, placed information on the record that contradicted the GOC's claims, explained that Commerce interpreted the information as indicating that NDRC continues to control the determination of provincial electricity prices, and provided parties with the opportunity to respond after explaining Commerce's interpretation in the preliminary results. *Id.* 21-22 (citing PDM at 29-30

(P.R. 160); GOC's June 19, 2018 Questionnaire Response at 70-71 (P.R. 74) and Exhibits II

E.22 and II E.23 (P.R. 75); GOC's December 19, 2018 Questionnaire Response at 1-3 (P.R.

156); and the Memorandum, "Placing Information on the Record Regarding Electricity," dated

September 24, 2021 (Electricity Information Memorandum), at Attachment I (NDRC Notice

2909) (R.P.R. 1)).  However, the GOC did not respond to Commerce's interpretation of the

information.  Remand Results at 22.

Because of the GOC's non-cooperation, Commerce appropriately resorted to an adverse

inference in selecting from among the facts otherwise available.  *Id.* at 21, 46-47.  "If, during

investigation or review of a countervailing duty order, Commerce determines that (a) 'necessary

information is not available on the record' or (b) 'an interested party or any other person ...

withholds information that has been requested by {Commerce},' 'fails to provide such

information by the deadlines ... or in the form and manner requested,' 'significantly impedes a

proceeding,' or 'provides such information but the information cannot be verified,' Commerce

must use 'facts otherwise available.'"  *Canadian Solar, Inc.*, 23 F.4th at 1375-76 (quoting 19

U.S.C. § 1677e(a) and citing *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d

1318, 1327 (Fed. Cir. 2020)).

"If Commerce further 'finds that an interested party has failed to cooperate by not acting

to the best of its ability to comply with a request for information,' then Commerce 'may use an

inference that is adverse to the interests of that party in selecting from among the facts otherwise

available.'"  *Id.* (quoting 19 U.S.C. § 1677e(b)).  "To reach an adverse inference, Commerce can

rely on information from the petition, a final determination in the investigation, prior

administrative reviews, or 'any other information placed on the record.'"  *Id.* (quoting 19 U.S.C.

§ 1677e(b)(2) and citing 19 C.F.R. § 351.308(c), *Gallant Ocean (Thai.) Co. v. United States*, 602

15

F.3d 1319, 1321 (Fed. Cir. 2010)).  In this proceeding, Commerce determined that the provision

of electricity is a regionally specific subsidy by applying an adverse inference in selecting from

among the facts otherwise available.  Remand Results at 24-25.

Commerce's application of adverse facts available is supported by substantial evidence.

First, there is an unexplained but undisputed variation in regional electricity prices.  *Id.* at 20

(GOC's June 19, 2018 Questionnaire Response at Exhibit II E.22 (P.R. 75)).  Commerce

examined the record and found evidence indicating the NDRC's continued influence over the

price setting system.  *Id.* at 22-24 (citing Electricity Information Memorandum at Attachment I

(NDRC Notice 2909) at pp. 3-5 (R.P.R. 1), GOC's June 19, 2018 Questionnaire Response at

Exhibits II E.22 and II E.23 (P.R. 75), and Final Results IDM at 30).  Commerce found the

NDRC's key directives in Appendix I of the NDRC's Notice 2909 suggest that the State Council

and NDRC have ultimate control over price setting.  *Id.* (citing Electricity Information

Memorandum at Attachment I (R.P.R. 1)).  Commerce also identified Article X of Appendix I of

Notice 2909, which states that to avoid sharp fluctuations in coal and electricity prices, "the State

Council shall authorize the National Development and Reform Commission according to the

Price Law of the People's Republic of China to adopt price intervention measures when such

sharp fluctuations occurs."  *Id.*

Although Notice 2909 is dated in 2004, "Commerce specifically offered parties the

opportunity during this remand redetermination to provide information concerning whether

Notice 2909 was still operative law during 2016."  *Id.* at 23 n.83.  Commerce concluded that

nothing on the record indicates the repeal of Notice 2909, which demonstrates price setting

responsibilities are ultimately in the hands of the State Council and the NDRC.  *Id.* at 23.

Additionally, Commerce examined NDRC's Notice 748, which implements the new 2015

system and contains directives to reduce electricity prices. *Id.* (citing GOC's June 19, 2018 Questionnaire Response at Exhibits II E.22 and II E.23 (P.R. 75) and Final Results IDM at 30). Commerce considered Article 6 of Notice 748, which requires provinces to report their plans to the NDRC. *Id.*

Because the GOC failed to provide information that would allow Commerce to ascertain the reason for provincial electricity price variations, Commerce appropriately relied on adverse facts available. *Id.* at 24. In applying adverse facts available, Commerce determined, based on record evidence, that contrary to the GOC's claims, "the central Chinese government, through the NDRC in Beijing, sets different prices in different regions under its authority (*i.e.*, the provinces) without any commercial or market considerations, but instead for development purposes." *Id.* The record evidence listed above supports this determination because, as reflected by Notices 748 and 2909, "the key directives of the price-setting system still originate from the NDRC . . . ." *Id.* From this fact, Commerce concluded that the NDRC is the price setting authority providing the subsidy. *Id.* Accordingly, Commerce found that the provision of electricity is a regionally specific, countervailable subsidy. *Id.*

Relevant here, this Court sustained a similar finding in each of the prior two reviews, and Commerce's specificity finding in the fourth administrative review was affirmed by the Federal Circuit. *3rd Opinion on 3rd Admin. Review*, Slip Op. 20-108 at 18-25; *2nd Opinion on 4th Admin. Review,* Slip Op. 20-149 at 10-13, *aff'd*, *Canadian Solar, Inc.*, 23 F.4th 1372. The arguments Canadian Solar makes regarding Commerce's specificity determination are largely the same as those the Federal Circuit rejected. Because Commerce's specificity and benchmark findings here are materially the same as its determinations in the prior reviews that the Courts

have upheld, Commerce's specificity finding complies with the *Remand Order* and is supported by substantial evidence.

Canadian Solar offers no new arguments, but repeats the arguments that this Court previously found unconvincing. First, it argues that Commerce's determination is not in accordance with law because Commerce has not identified a specific region that is being subsidized nor has it demonstrated that the solar industry is located within the region that is being subsidized. Canadian Solar Cmts. at 5-10. Canadian Solar asserts that the statute requires Commerce to identify the subsidized region, even under adverse facts available. *Id.* at 11-12. As Canadian Solar acknowledges, however, it "presented this precise statutory interpretation argument to the Federal Circuit in the appeal of the fourth administrative review{.}" *Id.* at 12 (citing the appeal of *Canadian Solar*, Court No. 18-00184). The Federal Circuit has now rejected Canadian Solar's statutory interpretation. *Canadian Solar, Inc.*, 23 F.4th at 1380 ("Canadian Solar also argues that instead of identifying a particular subsidized region, as it believes is required by statute, Commerce improperly 'ascrib{ed} the supposedly regional subsidy program to every single region and province across China.' . . . We disagree.").

As described by Federal Circuit, "Section 1677(5A)(D)(iv) provides that a subsidy is regionally specific where it is 'limited to an enterprise or industry located within a designated geographical region within the jurisdiction of the authority providing the subsidy.'" *Canadian Solar, Inc.*, 23 F.4th at 1380 (quoting 19 U.S.C. § 1677(5A)(D)(iv)). Applying this law, the Federal Circuit held that "where documents support the inference that the central government of China was involved in provincial electricity pricing that results in regional price variability, substantial evidence supports Commerce's finding that there is a countervailable regionally

specific subsidy." *Id*. (citing *2nd Opinion on 4th Admin. Review,* Slip Op. 20-149, and *3rd Opinion on 3rd Admin. Review*, Slip Op. 20-108 at 23).

The Federal Circuit found this Court's *Royal Thai* decision instructive, explaining that "an electricity subsidy provided by the Royal Thai Government 'satisfied the requirements of regional specificity' where '{a}ccess to this relatively cheaper electricity was expressly contingent on only one factor: a company's regional location within Thailand.'" *Id.* (quoting *Royal Thai Gov't v. United States*, 441 F. Supp. 2d 1350, 1358 (Ct. Int'l Trade 2006)).  The Federal Circuit further agreed with the reasoning in *Samsung Electronics Co. v. United States*, 973 F. Supp. 2d 1321, 1328-29 (Ct. Int'l Trade 2014), and explained that, "even if a particular electricity subsidy is provided to more than one province, so long as it is provided to less than all regions or varies by region, that subsidy can be fairly regarded as regionally specific under the statute." *Id.*  Accordingly, in accordance with the holding of *Canadian Solar, Inc.*, 23 F.4th at 1380, Canadian Solar's argument is not supported by the law.

Canadian Solar's next argument, that Commerce's reliance on adverse facts available was not supported by substantial evidence, because no gap existed in the record, was also considered, and rejected, by the Federal Circuit.  *See* Canadian Solar Cmts. at 13-19.  As the Federal Circuit explained, "{t}his court has specifically upheld the application of adverse facts available where 'the government of China refused to provide information as to how the electricity process and costs varied among the various provinces that supplied electricity to industries within their areas' and 'did not provide the data sufficient to establish the benchmark price for electricity.'" *Canadian Solar, Inc.*, 23 F.4th at 1378 (quoting *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1372 (Fed. Cir. 2014)).  The Federal Circuit then stated that "Commerce

identified comparable informational gaps in this case." *Id.* (citing the remand redetermination in the fourth administrative review at 14-19).

Importantly, Commerce's analysis on remand is materially the same—including the identified informational gaps—as the analysis affirmed by the Federal Circuit. *See* Remand Results at 20-21 (reflecting the same gaps in the record cited by the Federal Circuit, "{T}he {government of China} refused to provide key information that would allow Commerce to confirm its claims . . . . {citing GOC's June 19, 2018 Questionnaire Response at 68-70, 72-76 (P.R. 74)}. Without such information, Commerce cannot confirm that market and commercial principles explain the variation in electricity prices on the record among provinces and cannot determine the price-setting authority.").

Next, Canadian Solar argues that Commerce's benchmark construction, in which Commerce selected the highest electricity rate for each category from among the various provincial price schedules, demonstrates that Commerce failed to designate a subsidized geographical region. Canadian Solar Cmts. at 19-25. But this argument too was rejected by the Federal Circuit. *See Canadian Solar*, 23 F.4th at 1381 ("Canadian Solar also argues that the benchmark calculations render Commerce's regional specificity findings unreasonable."). The Federal Circuit explained that "this issue arises only because the government of China declined to provide information that would have permitted Commerce to identify an unsubsidized province or unsubsidized rates." *Id.* (citing the remand redetermination in the fourth administrative review at 40-41). Therefore, the Federal Circuit found that, "{i}n the absence of that information, it was reasonable for Commerce to infer that the highest rate in each category was unsubsidized." *Id.* Regarding Canadian Solar's argument that this benchmark therefore renders all regions subsidized, the Federal Circuit stated that "Commerce's rate calculation does

20

not undermine the separate conclusion that the electricity subsidies are geographically specific because the rates depend on the province in which an enterprise is located. *Id.* (citing the remand redetermination in the fourth administrative review at 19).

Canadian Solar next argues that Commerce could have selected a subsidized geographical region by applying an adverse inference from among the facts available, but it cannot "conclude that nowhere and everywhere is subsidized in China." Canadian Solar Cmts. at 25-29. This argument fails for the same reasons as Canadian Solar's prior arguments. The Federal Circuit has confirmed that Commerce need not designate the geographical region being subsidized when Commerce has established that prices vary by region, particularly where the government of China's lack of cooperation has prevented Commerce from identifying which regions are subsidized. *Canadian Solar, Inc.*, 23 F.4th at 1380.

Finally, Canadian Solar challenges Commerce's construction of the benchmark, arguing that Commerce nonsensically treats a single factory as located in multiple locations. Canadian Solar Cmts. at 29-30. Although Canadian Solar did not appeal this issue to the Federal Circuit, this Court has previously rejected Canadian Solar's argument—as Canadian Solar acknowledges. Canadian Solar Cmts. at 30 (citing *1st Remand Order of the 3rd Admin. Review*, Slip Op. 18-166 at 40-41). As this Court explained, "Commerce's goal in setting a benchmark rate is to best approximate the market rate of electricity, not to choose the rate respondents were most likely to pay in an electricity market Commerce argues is tainted by the {government of China's} interference." *1st Remand Order of the 3rd Admin. Review*, Slip Op. 18-166 at 41. Therefore, this Court concluded that "Commerce can apply an adverse inference to the {government of China's} electricity rate submissions and select the highest rates for each electrical category and use those to set a benchmark." *Id.* (citing 19 U.S.C. § 1677e(b); 19 C.F.R. § 351.511(a)(2)(iii);

and *Fine Furniture (Shanghai) Ltd. v United States*, 865 F. Supp. 2d 1254, 1260-62 (Ct. Int'l Trade 2012)).

Additionally, Canadian Solar's argument ignores the nature of Commerce's adverse facts available practice.  Commerce may employ an adverse inference "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."  Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. 103-316, Vol. 1, 103d Cong. at 870 (1994); *see also Fine Furniture (Shanghai)*, 748 F.3d at 1373 (quoting the same) and *Essar Steel, Ltd. v United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (discussing importance of adverse facts available given lack of subpoena power).  Using the highest rate for each category ensures that the government of China's non-cooperation does not produce a more favorable result for the respondents than if the government of China had fully cooperated.  Therefore, Canadian Solar's challenge to the electricity benchmark calculation is without support.

Regarding the arguments of Jinko Solar and Shanghai BYD, they each state that they oppose Commerce's determination and incorporate by reference Canadian Solar's comments on the issue.  Jinko Solar Cmts. at 3; Shanghai BYD Cmts. at 4-5.  For the reasons discussed above, the positions of Jinko Solar and Shanghai BYD are equally unavailing.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand

redetermination and enter judgment for the United States.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. MCCARTHY<br>Director</td></tr>
<tr><td>By:</td><td>/s/ Tara K. Hogan<br>TARA K. HOGAN<br>Assistant Director</td></tr>
</table>

OF COUNSEL:

PAUL KEITH
Senior Attorney
Office of the Chief Counsel
   for Trade Enforcement and Compliance
U.S. Department of Commerce

March 11, 2022

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
U.S. Dept. of Justice, Civil Division
International Trade Field Office
26 Federal Plaza, Rm. 346
New York, NY 10278
Tel. (212) 264-9241
Fax (212) 264-1916
Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Justin Miller, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's reply to the comments on the remand redetermination in this case, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's standard chambers procedures, and contains 6,640 words.

<u>/s/ Justin R. Miller</u>